WALTER MALLICOAT et ux., Plaintiffs in Error, v.
VOLUNTEER FINANCE & LOAN CORP., Defendant
in Error.*—415 S.W.(2d) 347.

Eastern Section. December 3, 1966.

---

* No petition for certiorari filed. Approved for publication by the
P. J., Middle Section, and two other members of the Court.

108

Sumter D. Ferguson, Jr., Knoxville, for plaintiffs in error.

John K. King, Morton, Morton & Lewis, Knoxville, for defendant in error.

McAMIS, P. J. This action was instituted by Volunteer Finance & Loan Corp. as the assignee of Hull-Dobbs, an automobile dealer in Knoxville, to recover of Walter Mallicoat, Jr., and wife a deficiency arising from the repossession and sale under a Security Agreement entered into between the Mallicoats and Hull-Dobbs. A

separate action was brought by the Mallicoats against Hull-Dobbs for breach of contract and fraud in the sale of the automobile.

The two cases were heard together without a jury and resulted in a judgment for $340.12 in favor of Volunteer Finance against the Mallicoats and a judgment in favor of the Mallicoats against Hull-Dobbs for $628.58. The Mallicoats and Hull-Dobbs have appealed. (A separate opinion is being filed in the case of Mallicoat and wife against Hull-Dobbs).

The primary question in this case is whether Volunteer Finance complied with the provisions of the Uniform Commercial Code, Secured Transactions, T.C.A. sec. 47-9-101 et seq., with respect to advertisement and notice of sale after repossession.

On October 12, 1964, Mallicoat and wife purchased the car from Hull-Dobbs for the agreed price of $600.00, the "Time Purchase Price" being $826.90. Of this amount $250.00 was paid in cash, leaving $576.90 to be paid in monthly installments of $38.46 each. After paying one installment the Mallicoats refused to make additional payments, claiming the car was defective and not as represented, and surrendered it to Volunteer Finance Company.

Volunteer Finance introduced its loan manager, Mr. Austin, and rested. The Mallicoats introduced no proof in this case.

Mr. Austin testified Volunteer Finance purchased the security agreement from Hull-Dobbs on the date of its execution and that he kept the records of the transaction thereafter. According to his testimony, after

crediting one installment paid by the Mallicoats, the balance amounted to $538.40. After default and the return of the car by the Mallicoats, he notified them by registered letter that the car would be sold but he admitted the letter came back unclaimed. He testified the sale was advertised by posters but on cross examination admitted he was unable to state when or where it was advertised. There is no proof on that question and there is no proof of the contents of the letter and whether it gave the date of the proposed sale or merely stated in general terms that the car would be sold.

According to the witness Austin there was a public sale of the car on January 11, 1965, at which it was sold to Beeler Motor Company for $150.00. That amount was then credited on the contract leaving a balance of $388.40. An additional amount of $92.28 representing refund on "credit life insurance" was also credited. The remaining balance with attorneys fees was the amount for which judgment was rendered.

T.C.A. sec. 47-9-504(3) provides in part:

"Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent

by the secured party to the debtor, and except in the case of consumer goods to any other person who has a security interest in the collateral and who has duly filed a financing statement indexed in the name of the debtor in this state or who is known by the secured party to have a security interest in the collateral.''

■ It is not contended the property here involved was perishable or ''of a type customarily sold on a recognized market.'' There is no proof that Mallicoat was in a business requiring the use of an automobile. He testified he bought it to use in going to and from his place of employment. It is clearly not ''equipment'', ''farm products'' or ''inventory'' as defined by T.C.A. sec. 47-9-109. We, therefore, hold that it falls within the category of ''consumer goods'' as defined by the same Section of the Act.

After providing generally that the method, manner, time, place and terms of disposing of the collateral shall be ''commercially reasonable'' the Act expressly requires that ''reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor.''

■■ The requirement that the property be disposed of in a ''commercially reasonable'' manner seems to us to signify that the disposition shall be made in keeping with prevailing trade practices among reputable and responsible business and commercial enterprises engaged in the same or a similar business. It is general in scope and effect and is not mutually exclusive of the express requirement that notice of the intended disposition,

whether by public or private sale, be sent to the debtor. The purpose of this notice, without doubt, is to enable the debtor to protect his interest in the property by paying the debt, finding a buyer or being present at the sale to bid on the property or have others do so, to the end that it be not sacrificed by a sale at less than its true value. Compare Range Motor Co. v. Tipton, 161 Tenn. 427, 33 S.W.2d 75, a suit under the Conditional Sales Statute.

■ In view of the undisputed proof in this case that the debtor did not receive the notice and that the secured creditor was aware that he had not received it, it is our opinion the creditor not only failed to show a compliance with the Act but that the record affirmatively shows a lack of compliance and a conscious disregard of the debtor's right to notice. The property was not perishable. The debtor lived in Knoxville where the creditor had its place of business and sold the property. In addition, the creditor had information as to where the debtor was employed and where his parents lived. Yet, the sale was allowed to proceed without any further effort to comply with the notice requirement.

In commenting on this provision of the Commercial Code, it is said at p. 788, 15 Am.Jur.2d, Commercial Code, Section 84:

"Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private or other intended disposition is to be made shall be sent to the debtor * * *."

The Act, T.C.A. sec. 47-1-201(26) reads:

"A person 'notifies' or 'gives' notice or notification to another by taking such steps as may be reasonably required to inform the other in ordinary course whether or not such other actually comes to know of it. * * *''

Under this provision of the Act, the Supreme Court of Arkansas held in Hudspeth Motors, Inc. v. Wilkinson, 382 S.W.2d 191, that a public sale of the property would not be invalidated because the debtor failed to receive the notice sent by mail until after the sale. This case is urged upon us in this case as supporting the judgment. We consider it inapposite, however, since the creditor in that case was unaware of the failure of the debtor to receive the notice in time. If interpreted as holding valid a sale where the creditor proceeds to sell the property knowing the debtor had never received the notice we would not be disposed to follow it.

■ The requirement of notice is for the benefit and protection of the debtor. This provision of the Act should be construed and applied in a manner to effectuate this salutary purpose and in the light of Tennessee law.

In Burden v. Burden, 44 Tenn.App. 312, 313 S.W.2d 566, it was said:

"Notice which is a mere gesture is not notice. The means employed must be such as one desirous of actually informing the absent party might reasonably adopt. Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865."

■ We are also of opinion the creditor failed to conduct the sale in a "commercially reasonable" manner. One element bearing on this question of whether the sale was "commercially reasonable" is lack of notice, known

to the creditor. In addition, the creditor had in its possession and keeping the evidence of when and where the notices were posted, whether the property was adequately described in the notices and the length of time the notices remained posted. Since it failed to introduce the employee who made up and posted the notices, in the absence of any explanation, we must assume the testimony of such employee or agent would not have been favorable to plaintiff Volunteer Finance on the question whether the notice of sale conformed to the prevailing custom and usage in the automobile and finance trade with respect to advertising a sale of repossessed automobiles.

■ "Failure to call an available witness possessing peculiar knowledge concerning facts essential to party's cause, direct or rebutting, or to examine such witness as to facts covered by his special knowledge, especially if witness be naturally favorable to party's contention, relying instead upon evidence of witnesses less familiar with the matter, gives rise to an inference that testimony of uninterrogated witness would not sustain contentions of such party." National Life & Accident Ins. Co. v. Eddings, 188 Tenn. 512, 221 S.W.2d 695.

■ Since the proof incident to advertisement and sale was peculiarly within the knowledge of Volunteer Finance, the burden was upon it to show a compliance with the Act. Compare cases arising under Conditional Sales Act, including Whitelaw Furn. Co. v. Boon, 102 Tenn. 719, 52 S.W. 155; Beets v. John R. Jarnagin Motor Co., 180 Tenn. 358, 175 S.W.2d 326; Kidd v. Condry, 25 Tenn.App. 182, 154 S.W.2d 530.

The testimony of Mr. Austin above detailed that the property was disposed of at a public sale, standing alone, was not sufficient to carry this burden.

Under the circumstances of this case, we hold the plaintiff-creditor failed to give the debtor reasonable notice of the sale and failed to carry the burden of showing a "commercially reasonable" sale.

The result of the creditor's failure to give notice and dispose of the property in a "commercially reasonable" manner remains to be considered.

The Act, T.C.A. sec. 47-9-507, provides in part:

"If the disposition has occurred the debtor * * * has a right to recover from the secured party any loss caused by a failure to comply with the provisions of this Part. If the collateral is consumer goods, the debtor has a right to recover in any event an amount not less than the credit service charge plus ten percent (10%) of the principal amount of the debt or the time price differential plus ten percent (10%) of the cash price."

 There is no finding by the trial judge on this question and the record is not such that we can determine the rights of the parties. Accordingly, the case is remanded for the determination of the amount still due plaintiff, if any, after allowing defendants an off set for the amount due them.

Costs to the present in both Courts are adjudged to Volunteer Finance & Loan Corporation.

Cooper and Parrott, JJ., concur.