**INTERNATIONAL HARVESTER CREDIT CORPORATION, Appellant,**

v.

**Sam P. INGRAM, Appellee.**

Court of Appeals of Tennessee,
Western Section,
at Jackson.

April 29, 1981.

Permission to Appeal Denied by Supreme Court July 13, 1981.

Craig J. Donaldson, Memphis, for appellant.

John S. Porter, Memphis, for appellee.

## OPINION

JOHN D. TEMPLETON, Special Judge.

International Harvester Credit Corporation sued Sam P. Ingram for a deficiency claimed to be owed under a security agreement after the sale of the collateral. Ingram defended on the ground that he had no reasonable notice of the sale, that the sale was not commercially reasonable, and that the value of the collateral was equal to or in excess of the debt. The jury decided all issues in Ingram's favor, including a finding that the value of the collateral exceeded the debt by $6,741.41, and the judge approved the verdict. Although Ingram did not expressly demand a judgment for the excess in his answer, the judge awarded him one for $6,741.41. When the motion for a new trial was heard he moved for and was granted leave to amend to make the demand. On appeal I.H.C.C. submits as issues whether there was material evidence to support the findings of the jury and whether under the pleadings it was proper

to allow a judgment for the excess. We find the issues against the appellant and affirm the judgment.

On the trial questions were submitted to and answered by the jury.

1. Did the International Harvester Credit Corporation give Sam P. Ingram reasonable notice of the sale of the 175 C Crawler prior to the sale in August 1978?

No

2. Was every aspect of the sale of the 175 C Crawler by International Harvester Credit Corporation in August 1978, including the method, manner, time, place, and terms commercially reasonable?

No

3. What is the present indebtedness of Sam P. Ingram to International Harvester Credit Corporation without regard to the amount realized from the sale of the 175 C Crawler?

$42,258.59

4. What was the fair market value of the 175 C Crawler in August 1978, at the time it was sold by International Harvester Credit Corporation to International Harvester Company?

$49,000.00

Neither party objected to the form or content of the questions. The answer to the third question, amount of the debt, was agreed on and the jury instructed accordingly.

In the first three issues presented here the appellant insists there was no material evidence to support the jury's findings. Our review of the evidence is made under well recognized rules not necessary to recite. *Graham v. First American National Bank*, Tenn.App., 594 S.W.2d 723 (1980).

On March 5, 1976, Ingram purchased an International crawler tractor, Model 175C, from Road Builders Equipment Company. Road Builders is a construction equipment dealer in Memphis for International Harvester Company. He paid $10,958 down and executed a security agreement for the balance which with taxes, insurance and finance charges amount to $58,754. He paid an installment but soon defaulted and in June 1976, at appellant's request surrendered possession of the machine. Appellant placed the machine on Road Builders' lot where it remained until it was sold in August 1978. Appellant is a subsidiary of I.H.C. and was the assignee without recourse of the security paper. On August 16, 1976, appellant sent Ingram a collection letter which included a notice that, "Unless we hear from you on or before August 30th we will issue a notice of public auction on this equipment". In October 1976, appellant refinanced the debt and took as additional collateral a John Deere crawler tractor belonging to Ingram. He paid the first installment due in December 1976 except for $191 but defaulted altogether on the second installment due March 10, 1977. Appellant picked up the John Deere machine and put it on Road Builders' lot.

By letter dated April 6, 1977, appellant undertook to give Ingram the notice of sale provided for in T.C.A. 47–9–504(3). The notice stated, "this equipment will be offered for sale and will be sold at private sale after five o'clock p. m. on April 17, 1977, and from day to day thereafter until it is sold". The notice contained other information and was in lawful form. Appellant sent it to Ingram at his mailing address by certified mail and it was not returned.

In May 1977, appellant sold the John Deere machine for $4,000 and applied the proceeds on the debt. Before making the sale appellant notified Ingram of the price and secured his approval. Appellant contacted Ingram in October 1977, and advised Road Builders would pay $19,000 for the International machine. Appellant called on Ingram to pay or secure the deficiency but he could do neither. A few days later Ingram advised appellant he proposed to apply for a loan through a federal agency and use the proceeds to pay the balance owing on the machine. Appellant "agreed to go along, give Mr. Ingram whatever time it took to obtain the funds". He finally got his loan approved but the agency ran out of money. On March 13, 1978, he notified appellant of this fact. In August 1978,

appellant sold the machine to an I.H.C. company store in Missouri for $18,000. Ingram was not consulted about the sale.

The disposition of collateral is governed by T.C.A. 47–9–504(3). It provides, "every aspect of the disposition including method, manner, time, place and terms must be commercially reasonable". And, respecting a private sale of the kind of collateral sold in this case, it further provides, "reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor".

We deal with notice separately because the jury dealt with it separately but in our view notice simply is another aspect of disposition. A sale must be commercially reasonable in the aspect of notice.

Generally notice is challenged for some infirmity in its content or the making of it. Here the notice was good initially and the jury's inquiry was narrowed to whether it became ineffective because of time and events between notice and sale. In this inquiry there are no statutory guidelines to go by and the law even expressly declines to delineate the time and circumstances under which a notice may cease to be effective. T.C.A. 47–1–201(25).

■ We think the provision for notice in connection with a sale is intended to afford the debtor a reasonable opportunity (1) to avoid a sale altogether by discharging the debt and redeeming the collateral or (2) in case of sale, to see that the collateral brings a fair price. A notice that does not afford him this reasonable opportunity is not reasonable notification and a sale under it is not commercially reasonable. See *Mallicoat v. Volunteer Finance & Loan Corp.*, 57 Tenn.App. 106, 415 S.W.2d 347 (1966).

■ In our opinion the rule applies whether the claim in the initial notice was deficient or, if good initially, it ceased to be effective because of time and circumstances. The inquiry in either case is whether the debtor was afforded a reasonable opportunity (1) to redeem or (2) to protect his interest at the sale.

■ As already related, appellant issued the notice of sale April 6, 1977, which advised Ingram the collateral would be sold at private sale, "after five o'clock p. m. on April 17, 1977, and from day to day thereafter until sold". Part of the collateral was sold in May 1977, but the International tractor not until August 1978. In October 1977, appellant contacted Ingram about Road Builders' offer of $19,000 and proposed to accept Ingram's note for the deficiency if properly secured but that was not done. Appellant then accepted Ingram's proposal to redeem if he could obtain a loan through the federal agency but the loan fell through in March 1978. The sale occurred almost six months later without consultation with Ingram.

Obviously a debtor will have a better opportunity to see that the collateral brings a fair price if he is notified when the sale will occur but the statute entitles him to notice only of the time after which a private sale will be made. However, the parties followed the practice of conferring about a proposed sale. Ingram was notified about and agreed to the sale of the John Deere tractor in May 1977, and was conferred with about the proposed sale of the International tractor in October 1977, as already described. Ingram believed he would be notified about the final disposition of the machine and in fact understood it would be sold at public sale.

It may be that Ingram had ample opportunity to redeem but promotion of the sale finally became his primary concern. We think that taking into account the undertaking to sell expressed in the notice itself, the lapse of time between notice and sale, the negotiations between the parties, and especially the practice adopted by them of conferring about a proposed sale, Ingram well might have been deprived of a reasonable opportunity to see that the tractor sold for a fair price. In that event the notice had ceased to be effective when the sale was made and the sale was not commercially reasonable.

In addition to the written notice of April 6, 1977, appellant relies on an oral notice of March 13, 1978. Appellant's witness testified that when Ingram advised at that time he could not obtain the loan to redeem the tractor, he was told, "that we would have no choice but to proceed and sell the machine as expeditiously as possible". Without inquiring into whether a notice must be in writing, we conclude the oral notice relied on did not notify Ingram of the time after which a private sale would be made and otherwise failed to satisfy the statute.

We think there was material evidence to support the jury's verdict there was no reasonable notice. The first issue is decided against appellant.

For resolution of the second issue, whether there was material evidence the sale was not commercially reasonable in all aspects, we look to T.C.A. 47–9–507(2) where some approved methods of disposition are stated in general terms as follows: "If the secured party either sells the collateral in the usual manner in any recognized market therefor or if he sells at the price current in such market at the time of his sale or if he has otherwise sold in conformity with reasonable commercial practices among dealers in the type of property sold he has sold in a commercially reasonable manner". Judge McAmis of this Court has explained the requirement that the property be disposed of in a commercially reasonable manner means, "that the disposition shall be made in keeping with prevailing trade practices among reputable and responsible business and commercial enterprises engaged in the same or a similar business". *Mallicoat v. Volunteer Finance & Loan Corp.*, supra, at 350.

Authority to dispose of collateral at private sale is calculated to allow a "higher realization on collateral for the benefit of all parties". See Comment 1 to T.C.A. 47–9–504. The difference in the sale price and value as shown by the proof, therefore, is a consideration in the inquiry. It is true that T.C.A. 47–9–507(2) cautions that the fact a better price could have been obtained is not of itself sufficient to establish that the sale was not commercially reasonable. However, we think a difference between the sale price of collateral and its value as shown by the testimony of witnesses is a factor to be considered.

Reviewing the proof with these observations in mind, the sale price was $18,000 while Ingram and his expert witnesses testified the tractor was worth from $43,750 to $55,000 and the jury settled on $49,000. During the two periods the machine was for sale, April 1977, to October 1977, and March 1978, to August 1978, it was on Road Builders' lot for sale on commission but the only bidder Road Builders secured was itself. It is reasonable to infer from the proof no real effort was made to sell the machine for value and it was simply stored. Appellant procured no other bids when it sold to the I.H.C. store in Missouri. Appraisals were made to support the sale but they were of wholesale value only and the weight to be given them was impaired by cross examination of the appraisers. It is conceded the sale to the I.H.C. store by appellant amounted to a sale to itself. In our opinion the tractor was not the type of collateral appellant could buy at a private sale under T.C.A. 47–9–504(3).

Aside from the aspect of notice alluded to earlier, we think there was material evidence the sale was not commercially reasonable in the aspects of manner and method. In our opinion there was material evidence the sale was not "made in keeping with prevailing trade practices among reputable and responsible business and commercial enterprises engaged in the same or similar business", and was not commercially reasonable. The second issue is decided against appellant.

On the third issue, whether there was material evidence the fair market value of the tractor was $49,000, the machine had been used about 1100 hours out of a normal life of 10,000 hours and was in good condition. The price of such equipment inflated substantially during 1976–1978. The testimony of Ingram and his witnesses supported the verdict. The third issue is decided against appellant.

The fourth and fifth issues challenge the entry of the judgment in Ingram's favor for $6,741.41, the excess of the fair market value of the collateral over the debt as found by the jury, and the granting of Ingram's motion to amend to make the demand by counterclaim. It appears the matter of an amendment was discussed when the judgment was about to be entered and Ingram's counsel was of the opinion it was unnecessary. The judge evidently agreed as he signed the order. At the motion for a new trial counsel moved to amend to make the demand by counterclaim, which he says was out of an abundance of precaution, and the judge granted the motion.

 The right to recover from the secured party any loss caused by failure to comply with the law, including loss caused by a sale of collateral that is not commercially reasonable, is expressly conferred by T.C.A. 47–9–507(1). In our opinion, at least where the loss exceeds the debt as in this case, the statute contemplates a claim or counterclaim for the loss will be made.

However, Ingram's answer contained an assertion that the collateral was worth "am amount equal to or in excess of" the debt and that the sale conducted as it was caused him "to lose the reasonable value of the equipment for which he has a right to recover under Section 47–9–507 of the Tennessee Code". Although the pleading contained no formal demand of judgment for any excess, we think it amounted to a counterclaim and was sufficient to support the judgment. TRCP 8.03.

Without objection the jury was called on to find the true value of the collateral. Ingram introduced proof of value that exceeded the debt. We think the case was tried as if the issue of the excess above the debt was raised by the pleadings. TRCP 15.02.

The amendment made after judgment was authorized. TRCP 15.02. In our opinion, the judge did not abuse his discretion in granting the motion to amend.

The fourth and fifth issues are decided against the appellant.

All of the issues are resolved against the appellant and the judgment is affirmed.

MATHERNE and TOMLIN, JJ., concur.