505 So.2d 352 (1987)
Gary JONES and Katie Jones
v.
FIRST NATIONAL BANK OF PULASKI, et al.
85-1016.
Supreme Court of Alabama.
March 27, 1987.
*353 Stephanie W. Werdehoff of Stephens, Millirons, Harrison & Williams, Huntsville, for appellants.
Joe W. Henry, Jr., of Henry, Henry & Stack, Pulaski, Tenn., for appellees.
JONES, Justice.
This is an appeal by plaintiffs Gary and Katie Jones from a summary judgment granted in favor of defendants, First National Bank of Pulaski, Tennessee; First National Bank of Pulaski, Ardmore Branch; Barbara Hodges; and Marsha Thornton.
Gary and Katie Jones, husband and wife, are residents of Madison County, Alabama. This case arose out of a series of loan transactions between the Joneses and the First National Bank of Pulaski, Ardmore Branch (hereinafter referred to as the "Bank"). The final transaction occurred on December 21, 1981. On that date the plaintiffs executed to the Bank a promissory note, in the amount of $22,251.32, secured by a real estate mortgage of the same date. Additionally, plaintiffs signed a truth-in-lending disclosure form, a financing statement listing various items of personal property to further secure the loan, and a security agreement listing the personal property which would secure the indebtedness.
When plaintiffs were unable to make payments on the loan, the Bank repossessed farm equipment designated as security for the indebtedness and disposed of the property (which included a Du-All, a foldover disc, and a cultivator) at a sale which netted $362.50.
Plaintiffs brought an action against the Bank, Barbara Hodges as vice president of the Bank, and Marsha Thornton as an employee and agent of the Bank. Plaintiffs charged defendants with trespass, wrongful repossession, sale of personal property in a commercially unreasonable manner, failure to give proper notice of the sale, falsification, forgery of documents, and fraud and deceit.
The Bank denied generally and raised the affirmative defenses of failure to state a cause of action for which relief could be *354 granted, laches, estoppel, right of offset, right of entry upon the premises of plaintiff's pursuant to the terms of the mortgage and consent of plaintiffs. The Bank further affirmatively defended on the grounds of statute of limitations, and the assertion that its actions were in accord with the provisions of the mortgage entered into between the parties. In addition, the Bank counterclaimed for money due and owing because of default on the part of plaintiffs.
Plaintiffs generally denied the allegations of the Bank's counterclaim and raise as affirmative defenses estoppel, fraud, illegality, unconscionability, payment, and satisfaction.
Plaintiffs appeal from a summary judgment in favor of defendants. Although multiple issues are presented, our determination of one issuethat of sufficiency of notice under Tenn.Code Ann., § 47-9-504 is dispositive of this appeal.

WHICH LAW GOVERNS
Plaintiffs submit that the trial court erred in ruling that Tennessee substantive law is applicable. We disagree. The trial court was correct in ruling that Tennessee substantive law (the Tennessee version of the Uniform Commercial Code) applies, although we conclude that the basis for its reasoning is erroneous.
In analyzing a problem arising under the UCC, we must look initially to the UCC itself, for, as provided in § 1-103, UCC, appearing as § 7-1-103, Ala.Code 1975, and as § 47-1-103, Tenn.Code Ann.:
"Unless displaced by the particular provisions of this title, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions." (Emphasis added.)
See Toomey Equipment Co. v. Commercial Credit Equipment Corp., 386 So.2d 1155, 1159 (Ala.Civ.App.1980). Thus, we must first consult the UCC to see if there are relevant provisions suggesting the appropriate forum for trial of this cause. Here, the UCC covers the question of which state's law will govern. Under the UCC, parties to a security agreement are permitted to stipulate as to the governing law on matters not involving the rights of third parties, provided the law has a reasonable relation to the transaction. Coogan, Secured Transactions Under the Uniform Commercial Code, § 3A.06[1], at 212.9 (1985). Section 1-105(1), UCC, provides:
"(1) Except as provided hereafter in this section, when a transaction bears a reasonable relation to this state and also to another state or nation the parties may agree that the law either of this state or of such other state or nation shall govern their rights and duties. Failing such agreement this title applies to transactions bearing an appropriate relation to this state."
In each of the security agreements relevant to this action, wherein certain property belonging to plaintiffs was pledged as security for loans made by the Bank, the parties agreed that the Tennessee Uniform Commercial Code would be the applicable law.[1]
We find that Tennessee law has a reasonable relation to the transaction, because the bank from which loans were made is located in Tennessee.

SUFFICIENCY OF THE NOTICE OF SALE
Defendants admit that they did not send plaintiffs written notice that the repossessed *355 property would be sold. Rather, the Bank contends that Barbara Hodges, its agent, called Katie Jones a few days prior to the sale and informed her of the day of the sale.
In its order granting summary judgment on May 1, 1986, the trial judge found that the notice of the sale given to plaintiff Katie Jones was "more than adequate and clearly satisfied the dictates of the U.C.C. as codified in both Tennessee [Tenn.Code Ann., § 47-9-504] and Alabama [Code 1975, § 7-9-504]." The trial judge concluded that, because the debtor's wife was orally notified of the sale and the date of sale by Barbara Hodges, the debtors had actual notice; thus, the court concluded that the notice was valid under the UCC. The trial judge acknowledged that the question whether oral notice is sufficient under § 9-504 of the UCC is one of first impression in both Alabama and Tennessee. The trial court adopted the policy applicable in the state of Ohio, reasoning that the language in the code sections of the three states is virtually the same.
The conclusion drawn by the lower court is that since there was a cooperative effort between Katie Jones and the Bank to dispose of the items, any question of notice of sale would be immaterial under the UCC. Additionally, reasoned the court, because the Joneses had actual notice of the sale, the notice provisions were satisfied. The trial court points out that "the Ohio statute RC Section 1301.07; the Uniform Commercial Code Section 1-201(25); Tenn.Code Ann. § 47-1-201(25)[; and] Ala.Code § 7-1-201(25) all define notice as follows: `a person has notice of the fact when: (1) he has actual knowledge of it; or (2) he has received a notice or notification of it; or (3) from all of the facts and circumstances known to him at the time in question he has reason to know that it exists.'" (Emphasis in the trial court's order.)
Finally, the trial court relies on the definition of "notice" in the UCC, which provides that a person receives notice of something when that thing comes to his attention. (See Tenn.Code Ann., § 47-1-201(26), and Ala.Code 1975, § 7-1-201(26).)
We do not agree with the trial court's analysis.

ORAL NOTICE OF SALE OF REPOSSESSED GOODS NOT SUFFICIENT UNDER TENN.CODE ANN., § 47-9-504(3)
Tenn.Code Ann., § 47-9-504, deals with a secured party's right to dispose of collateral after default. The particular provision relevant to the instant case reads:
"Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, and except in the case of consumer goods to any other person who has a security interest in the collateral and who has duly filed a financing statement indexed in the name of the debtor in this state or who is known by the secured party to have a security interest in the collateral." (Emphasis added.)
Tenn.Code Ann., § 47-1-201(38), defines "send" as:
"`Send' in connection with any writing or notice means to deposit in the mail or deliver for transmission by any other usual means of communication with postage or cost of transmission provided for and properly addressed and in the case of an instrument to an address specified thereon or otherwise agreed, or if there be none to any address reasonable under the circumstances. The receipt of any writing or notice within the time at which it would have arrived if properly sent has the effect of a proper sending."
We think it clear that "send," as used in § 47-9-504(3), encompasses more than a mere oral communication.[2] As indicated by *356 Professors James J. White and Robert S. Summers in their treatise, Uniform Commercial Code (2d ed. 1980) at 1112-13:
"Although several cases and an attorney general's opinion have suggested that oral notice is sufficient, these findings are almost certainly contrary to the draftsmen's intent. Section 9-504 requires that the secured party `send' notice and 1-201(38) tells that:
"`Send' in connection with any writing or notice means to deposit in the mail or deliver for transmission by any other usual means of communication with postage or cost of transmission properly provided for and properly addressed....'
"It is most difficult to fit an oral message into the quoted language. Rather the subsection seems to contemplate mail or telegraphic notice. Of course, no secured party will intentionally use only oral notices and the question of the propriety of oral notice is likely to arise only when the secured creditor has failed to comply with his usual procedure for some reason." (Footnote omitted.)
We think the White and Summers analysis to be the better interpretation. And although there are no Tennessee cases on point, in our study of that State's cases construing the notice provision of § 47-9-504(3), we read a general supposition that notice will be in writing.
Tennessee courts have held that "[t]he purpose of the [notice] requirement is to enable the debtor to protect his interest in the property by paying the debt, finding a buyer or being present at the sale to bid on the property or have others do so, to the end that it be not sacrificed by a sale at less than its true value." Commercial Credit Corp. v. Holt, 17 U.C.C.Rep. 316 (Tenn.App.1975), quoting Mallicoat v. Volunteer Finance & Loan Corp., 415 S.W.2d 347 at 350, 3 U.C.C.Rep.Serv. at 1038 (Tenn.App.1966). See, generally, Walker, "Creation, Perfection, and Enforcement of Security Interests Under the `Tennessee' Commercial Code," 48 Tenn.L.Rev. 820, 872-78 (1981). Taking this determination of the purpose of notice as a basic proposition, we next look to the Tennessee courts' treatment of the notice requirement in contexts other than the issue on appeal.
Mallicoat v. Volunteer Finance & Loan Corp., 415 S.W.2d 347 (Tenn.App.1966), is an oft-cited case dealing with the notice requirement of Tenn.Code Ann., § 47-9-504. Mallicoat held that it is not enough that a creditor has sent notice by registered mail, when that creditor is aware that the debtor never received the notice and the creditor had information which would allow the notice to reach the debtor.
Further, in Mallicoat, it was stated that "[t]he requirement of notice is for the benefit and protection of the debtor. This provision of the Act should be construed and applied in a manner to effectuate this salutary purpose and in the light of Tennessee law." 415 S.W.2d at 350-51.
Commercial Credit Corp. v. Cutshall, 28 U.C.C.Rep.Serv. 277 (Tenn.App.1979), is another Tennessee case dealing with the notice requirement of § 47-9-504. In it, the plaintiff, a secured creditor, sued the defendant debtor for a deficiency remaining on a debt owed after a sale of the repossessed property. The debtor contended that the creditor had failed to comply with the notice provisions of Tenn.Code Ann. § 47-9-504 in the sale of the property and that the sale was not conducted in a commercially reasonable manner. The creditor had mailed notices of the sale to Plaintiff and his ex-wife at separate addresses. (Plaintiff and his ex-wife had both signed the note which evidenced the indebtedness.) The letters were sent "Registered Mail, Return Receipt Requested." Plaintiff's ex-wife received her notice; however, plaintiff's letter was returned to the creditor, unopened, and with the notation "unclaimed" written on it. Creditor attempted unsuccessfully to reach plaintiff, by phone, at his place of business. The creditor never attempted, however, to ascertain the plaintiff's correct address or to contact him by letter in care of his place of work. The creditor posted a notice of sale at its office and the repossessed items were sold at private sale.
*357 In discussing the issue of notification, the Tennessee Court of Appeals stated:
"We fail to find a Tennessee case defining `reasonable notification'. We conclude that the word `reasonable' as used in the statute [§ 47-9-504] implies reasonableness in matters of notification other than mere time of notification. Reasonable notification would also involve where the notice was sent. If the creditor sent the notice to a place or address which under the circumstances it would be unreasonable to assume that the debtor would receive it, the statutory requirement would not be met. Under the statutory definitions herein quoted of `send' and `notification,' if the creditor sends the notice to an address which, under the circumstances, is reasonable, then the requirements of TCA § 47-9-504(3) are met regardless of whether the debtor actually received the notice. If the letter is returned unopened marked `unclaimed,' the creditor is then on notice that the debtor does not know of the sale and under Mallicoat the creditor is duty bound to take additional steps to get notice to the debtor. Failure to locate the debtor, after reasonable effort, does not, however invalidate the sale.... Whether proper effort to locate a debtor has been made is a question of fact to be determined by the circumstances of the particular case." (Original emphasis removed, emphasis added.) 28 U.C.C.Rep.Serv. at 281.
The court then held that the creditor had complied with the notice requirements of the UCC because he had sent a letter to the debtor informing him of the private sale, and the date thereof, and "the mailing of that letter constituted the sending of reasonable notification as required by statute. TCA § 47-9-504(3); TCA § 47-1-201(26) and (38)." 28 U.C.C.Rep.Serv. at 281.
It appears, then, that at a minimum, Tennessee courts require that in order to have a commercially reasonable sale, the creditor must send written notice of the proposed sale, and, whether the sending of the notice alone is enough to bring that sale within the requisites of § 47-9-504(3) depends on the facts of the case. Thus, the defendant Bank in this case should have, at a minimum, caused written notice to be delivered or sent to the Joneses. "In Tennessee, in a suit for a deficiency judgment, the creditor bears the burden of proving the commercial reasonableness of his disposition of repossessed property. * * * One aspect of commercial reasonableness is the notice requirement of TCA § 47-9-504(3)." Commercial Credit Corp. v. Holt, supra, at 320.
We find that, because the notice requirement of Tenn.Code Ann., § 47-9-504(3), was not complied with, the sale was not commercially reasonable. Under Tennessee law, the consequence of failure to sell collateral in a commercially reasonable manner is a situation where the secured creditor may recover the deficiency, but the recovery is subject to a reduction for any damages suffered by the debtor as a result of the noncompliance. This principle is outlined in Commercial Credit Corp. v. Holt, supra, at 322:
"In seeking a deficiency judgment after sale of an article in which the creditor holds a security interest governed by the Uniform Commercial Code (1) the creditor must prove he complied with the notice and commercial reasonableness requirements of TCA § 47-9-504(3); (2) if the trial court finds, from all the evidence, that the creditor has not so complied the court will, upon request by the debtor, allow a set-off from the amount of the deficiency in accordance with TCA § 47-9-507(1); [[3]] (3) in determining the *358 amount of the actual loss [[4]] caused by the noncompliance, the measure of damages is the difference between the amount actually realized on resale and the amount which would have been obtained had there been compliance with the Code's requirements; (4) it will be presumed, unless the creditor proves otherwise, that the difference is at least the amount of the deficiency."[5]
For the above stated reasons, the summary judgment is reversed, because of the trial court's finding on the sufficiency-of-the-notice issue under Tenn.Code Ann., § 47-9-504(3), and the cause is remanded.
REVERSED AND REMANDED.
MADDOX, ALMON, SHORES and ADAMS, JJ., concur.
TORBERT, C.J., and BEATTY, HOUSTON and STEAGALL, JJ., dissent.
HOUSTON, Justice (dissenting):
I respectfully dissent.
The last sentence of Tenn.Code Ann., § 47-1-201(38), provides: "The receipt of any writing or notice within the time at which it would have arrived if properly sent has the effect of a proper sending." (Emphasis added.)
Tenn.Code Ann., § 47-1-201(25) defines "notice" as follows: "a person has notice of the fact when: (1) he has actual knowledge of it." (Emphasis added.)
The trial court found that Katie Jones had actual knowledge of the sale three or four days before the sale. Therefore, I would affirm the trial judge's finding that notice was "more than adequate and clearly satisfied the dictates of the U.C.C. as codified in both Tennessee [Tenn.Code Ann., § 47-9-504] and Alabama [Code 1975, § 7-9-504]." I agree with the trial judge.
TORBERT, C.J., and BEATTY and STEAGALL, JJ., concur.
NOTES
[1] Preprinted documents, dated November 18, 1976, March 31, 1977, February 3, 1978, May 15, 1978, April 20, 1979, January 13, 1981, and December 21, 1981, and entitled "Security Agreement (Chattel Mortgage Form for Use With All Types of Collateral)," evidence agreements between the Bank and Gary Jones. The documents contain the following language:

"Gary Jones hereinafter called `Debtor,' whether one or more, hereby grants to First National Bank of Pulaski, Pulaski, Tennessee, hereinafter called `Secured Party,' a security interest pursuant to the Uniform Commercial Code (Tennessee) in and to the following described property:...."
[2] For a compatible interpretation under Alabama law, see Simmons Machine Co. v. M & M Brokerage, Inc., 409 So.2d 743 (Ala.1982).
[3] Section 47-9-507(1) reads as follows:

"If it is established that the secured party is not proceeding in accordance with the provisions of this Part disposition may be ordered or restrained on appropriate terms and conditions. If the disposition has occurred the debtor or any person entitled to notification or whose security interest has been made known to the secured party prior to the disposition has a right to recover from the secured party any loss caused by a failure to comply with the provisions of this Part. If the collateral is consumer goods, the debtor has a right to recover in any event an amount not less than the credit service charge plus ten percent (10%) of the principal amount of the debt or the time price differential plus ten percent (10%) of the cash price."
[4] This footnote is part of the quoted portion of the case:

"If the collateral is consumer goods, the debtor has the right to recover, in any event, not less than the credit service charge plus ten per cent of the (original) principal amount of the debt, or the time price differential plus ten per cent of the cash price. TCA § 47-9-507(1). Examples of this computation may be found in White & Summers, Uniform Commercial Code § 26-14 at 998 (1972)."
[5] But note the more recent case of Provident Employees Credit Union v. Austin, 31 U.C.C.Rep. Serv. 786, 788 (Tenn.App.1981), where the Eastern Section of the court, in ruling in a deficiency suit, stated:

"[T]his cause will be remanded to the trial court solely to determine what amount if any, is due the Credit Union after offsetting the defendant [debtor] for the fair value of the collateral which was sold with improper notice."
For a discussion of the Holt and Provident cases, see Walker, "Creation, Perfection, and Enforcement of Security Interests Under the `Tennessee' Commercial Code," 48 Tenn.L.Rev. 820, 872-78 (1981).