IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 18, 2005 Session

## AUTO CREDIT OF NASHVILLE v. MELISSA WIMMER

**Appeal from the Circuit Court for Sumner County**
**No. 23298-C      C. L. Rogers, Judge**

_____

**No. M2005-00978-COA-R3-CV - Filed on August 31, 2006**

_____

A woman bought a used automobile, financing the purchase with a loan from the plaintiff credit company. The loan was secured through a UCC Article 9 security interest in the vehicle. When the buyer fell behind in her payments, the creditor repossessed the car and sent her notice by certified mail that it intended to sell the car and that she would face a deficiency judgment if the sale price was less than the amount she still owed. She did not receive the notice, and the certified letter was returned unclaimed to the creditor the day after the sale. The creditor sued for a deficiency of over $3,400, and the circuit court granted it judgment for the amount claimed. The buyer sought statutory damages under Tenn. Code Ann. § 47-9-625 arguing that the attempted notice was inadequate, and the trial court dismissed her counterclaim. The buyer appeals this dismissal. We reverse the trial court because we find Auto Credit did not act reasonably in proceeding to sell the car without affirming that the notice had in fact been delivered.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Modified in Part and Reversed in Part**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which WILLIAM B. CAIN J., joined. FRANK G. CLEMENT, JR., J. dissenting.

James B. Hawkins, Steven J. Christopher, Gallatin, Tennessee, for the appellant, Melissa Wimmer.

James D. R. Roberts, Janet L. Layman, Nashville, Tennessee, for the appellee, Auto Credit of Nashville.

### OPINION

### I. PURCHASE AND REPOSSESSION

On April 28, 2000, Melissa Wimmer purchased a 1996 Plymouth Neon from Downtown Motors in Gallatin, Tennessee. Financing for the purchase was furnished by the plaintiff, Auto

Credit of Nashville ("Auto Credit"). The amount borrowed was $7,199.99. The annual interest rate was 29%, with the balance to be paid off in 156 weekly installments of $69.22, resulting in a total finance charge of $3,598.44. The loan was secured through a properly perfected UCC Article 9 security interest in the car.

Ms. Wimmer intermittently fell behind in her payments, only to catch up and then fall behind again. In January of 2002, she was told that if she did not bring herself current by paying four weeks of past due payments, Auto Credit would repossess the car. She reportedly told Auto Credit to take the car, because "she had nothing but trouble out of it since she got it." During the same telephone conversation, Auto Credit's representative informed Ms. Wimmer that she would receive written notice sometime after the repossession of her right to redeem the car, including the amount required to pay the debt in full.[1]

The car was repossessed from Ms. Wimmer's home on January 17, 2002. On January 18, 2002, Auto Credit sent, by certified mail, a letter to Ms. Wimmer's home address. The heading of the letter read "NOTICE OF OUR PLAN TO SELL PROPERTY," and its body stated that Auto Credit intended to sell the repossessed car "sometime after" January 28, 2002, unless Ms. Wimmer paid the remaining debt in full. It also explained that if the sale produced less money than she owed, Auto Credit would hold her liable for the difference and could seek a deficiency judgment against her.[2] The letter also explained how she could get the car back and how to get more information on the sale or the amount owed.

The car was sold at a public auction on February 7, 2002, for $1,800. The notice to Ms. Wimmer had been sent by certified mail, return receipt requested, but Auto Credit had not received any confirmation of delivery prior to the sale. On February 12, Auto Credit's notice was returned by the Post Office, marked "unclaimed." Notations on the returned envelope indicate that attempts were made to deliver the letter to Ms. Wimmer on January 24, February 7, and February 9, 2002.[3] Ms. Wimmer testified that she did not receive these notices.

The proceeds from the sale were not sufficient to meet the amount owed on the car. Consequently, on February 28, 2002 Auto Credit brought an action in Sumner County General Sessions Court to recover the deficiency balance. After a hearing, the General Sessions Court dismissed Auto Credit's action, finding that Ms. Wimmer had not been properly notified, pursuant to statutory requirements, of the sale or of her right to redeem the collateral.

---

[1] Auto Credit contended that its representative told Ms. Wimmer that she would receive notice "within a few days." Ms. Wimmer testified that she was told the letter would arrive 10 to fifteen days from the date of repossession.

[2] The language of the notice matches that set out in Tenn. Code Ann. § 47-9-614.

[3] The only evidence about these attempts came from Auto Credit's employee who interpreted unexplained handwritten notes of the three dates appearing on the returned envelope as indicating attempts to deliver. In her brief, Ms. Wimmer actually agrees that the notations on the envelope indicated attempts to deliver. However, there is no other evidence about those attempts.

Auto Credit filed an appeal in the Circuit Court of Sumner County. Ms. Wimmer filed an answer and counter-claim in which she asked for statutory damages under Tenn. Code Ann. § 47-9-625(c)(2) on the theory that Auto Credit failed to comply with the mandatory notice requirements under the statute.

The Circuit Court trial was conducted on December 16, 2004. Aside from Ms. Wimmer, the only witness to testify was Karen Clark, Auto Credit's Supervisor for Collections. Ms. Clark testified that Auto Credit had Ms. Wimmer's current phone number in its files, that an agent of Auto Credit lived in Ms. Wimmer's neighborhood, and that Auto Credit would not have been financially burdened if the sale had been postponed several weeks.

For her part, Ms. Wimmer denied that she had received any certified mail notices and claimed that Auto Credit was aware that she had experienced problems with her mail. She admitted that she made no effort to contact Auto Credit to check on the status of her car.[4]

At the conclusion of the trial, the court ruled in favor of Auto Credit, finding that it had fulfilled its notice requirements under the Uniform Commercial Code ("UCC"). The court dismissed Ms. Wimmer's counterclaim for statutory damages and awarded Auto Credit a deficiency judgment in the amount of $3,047.67 as well as attorney's fees and discretionary costs. Ms. Wimmer then filed a motion for a new trial as to the dismissal of her counterclaim, which was denied. This appeal followed.

## II. STATUTORY REQUIREMENTS

Secured transactions are governed by the Article 9 of the Uniform Commercial Code. Tenn. Code Ann. §§ 47-9-101 through 47-9-709. Tennessee Code Annotated § 47-9-625 provides for remedies against a secured party who fails to comply with the provisions of the UCC governing default. Where the collateral is consumer goods, a debtor may recover damages against a creditor who "failed to comply" with the provisions on repossession and disposition of collateral, according to a specified formula.[5] Tenn. Code Ann. § 47-9-625(c)(2). In essence, Ms. Wimmer argues that Auto Credit failed to comply with certain requirements.

---

[4] She also testified that she had spoken to her uncle and her father and that they had told her they would try to come up with the money to redeem the car. Consequently, she argued that she might have been able to redeem the car if she had received the promised notice. Auto Credit vigorously disputes this conclusion. We are of the opinion that her ability to redeem is not really relevant to the issue before us since statutory damages are not based on actual damages.

[5] The debtor may recover her actual damages, or "... in any event an amount not less than the credit service charge plus ten percent (10%) of the principal amount of the obligation or the time-price differential plus ten percent (10%) of the cash price." Ms. Wimmer thus asks this court to award her the credit service charge of $3,598.44 on her agreement and 10% of the principal amount on her obligation, or $719.98, for a total of $4,318.42, plus litigation fees, court costs, and applicable interest.

After a debtor defaults, a secured party may obtain possession of collateral and may sell or otherwise dispose of the collateral. Tenn. Code Ann. § 47-9-610(a). The general requirement for the sale is that "[e]very aspect of a disposition . . . must be commercially reasonable." Tenn. Code Ann. § 47-9-610(b). As the Comments to Official Text of the UCC point out, this section, like all others that create liability, is subject to limitations found elsewhere, *e.g.*, Tenn. Code Ann. § 47-9-628 (limitation on liability of secured party). Additionally:

> The principal limitations under this part on a secured party's right to enforce its security interest against collateral are the requirements that it proceed in good faith [Tenn. Code Ann § 47-1-203], in a commercially reasonable manner [Tenn. Code Ann §§ 47-9-607 and -610], and, in most cases, with reasonable notification [Tenn. Code Ann §§ 47-9-611 through -614].

Tenn. Code Ann. § 47-9-625 cmt. n. 2.

The requirement that is at issue in the case before us is reasonable notification. The purpose of the required notice is "to enable the debtor to protect his interest in the property by paying the debt, finding a buyer or being present at the sale to bid on the property or have others do so, to the end that it be not sacrificed by a sale at less than its true value." *Mallicoat v. Volunteer Finance & Loan Corp.*, 415 S.W.2d 347, 350 (Tenn. Ct. App. 1966).

A secured party who intends to dispose of collateral must "send"[6] to the debtor "a reasonable authenticated notification of disposition." Tenn. Code Ann. § 47-9-611(b) and (c). Reasonable notice has several aspects. Tenn. Code Ann. § 47-9-611 cmt. n. 2. One aspect of reasonable notice is content, *i.e.*, whether the language clearly gives the debtor all the necessary information. The required content of the notice is set out in Tenn. Code Ann. § 47-9-614. There is no issue in this case about the sufficiency of the content of the notice sent by Auto Credit.

Similarly, the notice must be sent within a reasonable time. Tenn. Code Ann. § 47-9-612. Reasonableness of the timing of the notice relates to the time period between the notice and the disposition of the collateral, so that the notice actually provides an opportunity for the debtor to take effective action in response to the notice. Tenn. Code Ann. § 47-9-612 cmt n. 2. By statute, a notification of disposition sent after default and at least ten (10) days before the earliest time of disposition set forth in the notification is reasonable. Tenn. Code Ann. § 47-9-612(b).[7]

---

[6] The UCC defines the term "send," as used in the context of notification, as "(A) to deposit in the mail, deliver for transmission, transmit by any other means of communication, with postage or cost of transmission provided for, addressed to any address reasonable under the circumstances; or (B) to cause the record or notification to be received within the time that it would have been received if properly sent under subparagraph(A)." Tenn. Code Ann. § 47-9-102(74).

[7] While this ten-day notice period is intended to operate as a "safe harbor," Tenn. Code Ann. § 47-9-612 cmt. n. 3, it necessarily has that effect only as to the issue of timeliness of the notice.

Another aspect of reasonable notice is the manner in which the notice is sent.[8]  Thus, regardless of the reasonableness or sufficiency of the timing and content, the notice must be sent in a commercially reasonable manner.  Tenn. Code Ann. § 47-9-612 cmt. n.3.  A perfectly complete and clear notice sent more than ten days before the proposed sale does not accomplish the purpose of the notice requirements if it is not received.  Consequently, a creditor must use reasonable means to ensure delivery or receipt. It is this aspect of notice that is the basis of Ms. Wimmer's claim that Auto Credit failed to comply with the notice requirements.

### III. PROCEDURAL STATUS

The case before us involved both a suit for a deficiency judgement brought by the secured party and a counterclaim for statutory damages brought by the debtor.  Ms. Wimmer appeals only the trial court's dismissal of her counterclaim and not the trial court's judgment awarding Auto Credit a deficiency judgment.[9]

In Tennessee a secured party may, in some circumstances, recover a deficiency judgment even where all the UCC's requirements for disposition of collateral have not been met.  *Davenport v. Chrysler Credit Corp.*, 818 S.W.2d 23, 32 (Tenn. Ct. App. 1999).  The award to a creditor of a deficiency judgment does not necessarily preclude award of statutory damages to the debtor.  *Id.*; *Blankenship-Melton Real Estate*, 166 S.W.3d 195, 205 (Tenn. Ct. App. 2004).  Thus, the awards are not mutually exclusive and, where both awards are justified, offset is proper.  *Davenport*, 818 S.W.2d at 32.  Because Ms. Wimmer has explicitly declined to appeal the deficiency judgment, we need not discuss further the law regarding those circumstances in which both types of awards are appropriate in the same case.

In the case before us, the issue is whether Auto Credit took the steps that were reasonably required to inform Ms. Wimmer of its intent and her options before it sold the car.  Reasonableness is a fact-specific inquiry that must be determined in the context of all the surrounding circumstances.  While there is room to argue who had the burden of proof on this issue, that determination will not affect the outcome in this case.  That is because the evidence is not really disputed.  The court's task herein is to determine whether, under all the circumstances as proved, Auto Credit provided reasonable notice as that term has been defined by statue and prior court rulings.

### IV. REASONABLE NOTICE

As set out earlier, the creditor is required to send reasonable notification of collateral disposition, and every aspect of notice must be reasonable, including the manner in which it is sent.

---

[8] Accordingly, a notice sent to an incorrect address when the sender has knowledge of the correct address and a notice sent without sufficient postage are not reasonable notice.

[9] She also filed a "Motion for Judgment Notwithstanding the Verdict" (presumably, a motion to alter or amend the judgment) or for a new trial contesting only the dismissal of her counterclaim.  In her brief, Ms. Wimmer states that she filed an appeal "of the dismissal of her counter-claim."

An analysis of the reasonableness of the creditor's actions must include consideration of the purposes of the notice requirement. The notice is intended to provide the debtor with the opportunity to either redeem the collateral and thereby avoid a sale or, if that is not possible, to make sure the sale results in a fair price for the collateral. *International Harvester Credit Corp. v. Ingram*, 619 S.W.2d 134, 137 (Tenn. Ct. App. 1981).

The statutes focus on the creditor's duty to provide notification and acts taken in performance of that duty. "A person 'notifies' or 'gives' a notice or notification to another by taking such steps as may be reasonably required to inform the other in ordinary course whether or not such other actually comes to know of it." Tenn. Code Ann. § 47-1-201(26). As the language of the statute makes clear, proof of actual notice to or receipt by the debtor is not required. *R & J of Tennessee, Inc. v. Blankenship-Melton Real Estate, Inc*., 166 S.W.3d 195, 205; 4 JAMES J. WHITE & ROBERT S. SUMMERS, UNIFORM COMMERCIAL CODE, § 34-12(d) (5th ed. 2002) ("We know of no case holding that the debtor must receive the notice.") [10]

If the only test were whether the creditor initially used methods that "in the ordinary course" would result in delivery of the notice, our analysis would stop here. Auto Credit's initial actions in sending the notice, *i.e.*, by certified mail to the correct address, certainly meet the standard of "steps . . . reasonably required . . . in the ordinary course" to actually achieve notification. Additionally, they meet the definition of "send", Tenn. Code Ann. § 47-9-102(74), and the creditor's duty is to "send" reasonable notice.

Further, our courts have held that, where the creditor properly sends a notice, the creditor is not "forced to take responsibility for lost mail or the debtor's refusal to accept properly delivered mail." *R & J of Tennessee, Inc.*, 166 S.W.3d at 204, quoting *NationsBank v. Clegg*, No. 01-A-01-9510-CH-00469, 1996 WL 165513, at *5 (Tenn. Ct. App. Apr. 10, 1996)(no Tenn. R. App. P. 11 application filed).

However, the inquiry does not end with analysis of the secured party's actions in initially sending the notice. Neither does the secured party's responsibility to make reasonable efforts to notify the debtor of the intended disposition end with the sending of notice. The courts of this state require more than a mere "sending" that meets the UCC's definition of "send" in order to find that a secured party has provided reasonable notice. *R & J of Tennessee, Inc.*, 166 S.W.3d at 204;

---

[10] Because receipt by the debtor is not a required element of reasonable notification of disposition of collateral, we need not analyze in detail the UCC definition of receipt. Suffice it to say that under that definition, as well as in actuality, Ms. Wimmer did not receive notice. Tenn. Code Ann. § 47-1-201(26) provides:

A person 'receives' a notice or notification when:
(A) It comes to his attention; or
(B) It is duly delivered at the place of business through which the contract was made or at any other place held out by him as the place for receipt of such communications.

*Federal Express Credit Union v. Lanier,* No. W2005-00194-COA-R3-CV, 2005 WL 2806638 (Tenn. Ct. App. Oct. 27, 2005) (no Tenn. R. App. 11 application filed) (relying on *Mallicoat* as compelling that conclusion).

Tennessee courts have applied the reasonableness standard to conduct by the creditor after the notice was sent. They have frequently looked at whether the creditor's decision to proceed with the sale was reasonable under the circumstances existing at that time, including the status of the notice to the debtor. In other words, the reasonable notice requirement, as applied by Tennessee courts, has encompassed consideration of the reasonableness of a broader range of conduct than simply how the creditor chose to send the original notice.

In examining the reasonableness of a creditor's actions in giving notice, the test has been stated as whether the creditor employed means "such as one desirous of actually informing the absent party might reasonably adopt." *Mallicoat*, 415 S.W.2d at 351. In *Mallicoat,* the secured creditor sent notice by registered mail of the impending sale of the debtors' automobile ten days before it was to take place. The letter came back unclaimed, but the creditor proceeded with the sale anyway. This court found that because the creditor knew that the debtors did not receive the notice but proceeded with the sale anyway, the creditor had not complied with the UCC and had shown "a conscious disregard of the debtor's right to notice." *Id.*, 415 S.W.2d at 350.

It has become well-settled in Tennessee that it is not reasonable for a secured party who knows that the debtor has not received the notice to proceed with the sale without making another attempt at notice.[11] *See*, *e.g.*, *First Tennessee Bank v. Helton*, 03A01-9501-CV-00026, 1995 WL 515658 (Tenn. Ct. App. Aug. 31, 1995)(no Tenn. R. App. P. 11 application filed)(holding that where a certified notice of disposition was returned unclaimed, but the secured party went ahead with the sale, without making any further effort to inform the debtors that their automobile would be sold, even though the creditor knew where the debtor was employed and had no difficulty contacting the debtors after the sale to let them know the amount of the deficiency, the notice provided by the creditor was defective).

Thus, if a secured party knows that the debtor has not received the notice, it is not reasonable to go ahead with the sale of the repossessed property without first making an additional attempt to notify the debtor. Conversely, if the creditor knows the debtor has timely received a notice that complies with the requirements of Article 9, and the debtor has not availed herself of the opportunity to protect her rights, then the creditor can sell the collateral without fear of adverse consequences.

---

[11]Thus, Tennessee is one of the states that has adopted a "second try" requirement where the creditor knows before the sale that notice has not been delivered. *See* 1 BARKLEY CLARK, THE LAW OF SECURED TRANSACTIONS UNDER THE UNIFORM COMMERCIAL CODE ¶ 4.08[7][a] (rev. ed. Supp. May 2001). Whether the secured party's attempts at a "second try", *i.e.*, efforts made after learning notice has not been delivered, are reasonable depends on the circumstances.

The more difficult question arises when the secured party does not know, before the sale, whether or not the notice has been delivered. Does the secured party act reasonably in that situation if it proceeds with the sale without taking any action to at least confirm that the notice was delivered? In terms of the case before us, the determinative question is whether Auto Credit should have taken steps to determine whether the notice had in fact been delivered to Ms. Wimmer before it proceeded with the sale.

We conclude that the answer to that question lies in two prior opinions by this court. In *R & J of Tennessee, Inc. v. Blankenship-Melton Real Estate, Inc.*, we held that the secured party did not provide reasonable notice under the statute when it sent notice to the debtor by certified mail and sold the collateral ten days later "without receiving any indication as to whether the notice actually reached [the debtor]."[12]  166 S.W.3d at 205.

Similarly, in *NationsBank v. Clegg*, No. 01-A-01-9510-CH-00469, 1996 WL 165513, at*6 (Tenn. Ct. App. Apr. 10, 1996)(no Tenn. R. App. P. 11 application filed), we stated:

> While absolute proof of receipt of notice may not be required in every instance, a creditor who makes only one attempt to contact the debtor, and is left uncertain of receipt of the notice, has not fulfilled its obligation to the debtor when it proceeds with a disposition less than two weeks from mailing its first notice.[13]

In such situations, the creditor cannot simply assume delivery of notice. Auto Credit did not receive any confirmation, but it went ahead with the sale anyway without taking reasonable steps to insure that the sale was being made only after reasonable notice to the debtor.

The proof showed that Auto Credit knew Ms. Wimmer's current phone number and had contacted her before repossessing the car. An agent of Auto Credit who lived in Ms. Wimmer's neighborhood had on occasion personally collected the weekly payment from her. Simple means

---

[12]The debtor in that case had moved and had not notified the bank of his change of address. While noting that the debtor bore some of the responsibility for his failure to receive notice of disposition of collateral, the court nonetheless held that the secured party's notice was unreasonable. 166 S.W.3d at 205. In the case before us, the trial court assigned responsibility to Ms. Wimmer for the failure of actual notice, finding that the evidence showed that Ms. Wimmer "failed to claim the certified mail notice." However, in our review of the record, we are unable to find any such evidence. Auto Credit's employee testified that the envelope that was returned to Auto Credit marked undelivered had three handwritten dates on it. She interpreted those notes as indicating dates of attempted delivery, and Ms. Wimmer does not challenge that interpretation. However, there is absolutely no evidence as to what happened when any deliveries were attempted. Specifically, there is no evidence that postal employees left any kind of notice of attempted delivery, as the trial court's finding implied. Consequently, there is no evidence to contradict Ms. Wimmer's testimony that she did not receive any notice of attempts to deliver certified mail.

[13]Auto Credit has seized on a portion of the above-quoted language and argues that its notice must be considered reasonable because it scheduled the sale of the car for twenty days after it sent out the certified mail notice, in excess of both the ten day minimum set out in the statute, and the two weeks that were found to be inadequate in *Clegg*. We do not consider the time between the original sending of the notice and the sale to be significant to application of the primary principle of both *Clegg* and *R & J of Tennessee, Inc*.

to verify delivery or ascertain the status of certified mail exist. Auto Credit did not attempt to call or contact Ms. Wimmer after it sent the notice and did not attempt to determine whether the notice had in fact been delivered, even though it had not received the "return receipt" it requested.

Auto Credit attempts to shift the burden to Ms. Wimmer by noting that she had already been informed over the phone that she would be sent a notice of its plans for the collateral and suggests that if she had truly intended to redeem it, she could have called Auto Credit to get information. The statute, however, places the burden of furnishing reasonable notice on the creditor.

In light of Auto Credit's failure to verify delivery of the notice of disposition of collateral, we conclude that the evidence preponderates against the trial court's finding that Auto Credit furnished reasonable notice to Ms. Wimmer. We hold that Auto Credit should have taken reasonable steps to determine whether the notice had been delivered to Ms. Wimmer before it proceeded with the sale. It took no steps at all. Consequently, we reverse the dismissal of her counter-claim.

## V. DISCRETIONARY COSTS

Auto Credit filed a motion to be awarded its discretionary costs. Such an award may be made to the prevailing party under Rule 54.04(2) of the Rules of Civil Procedure. The trial court granted the motion and awarded $587.50 to Auto Credit to reimburse it for costs incurred in obtaining the services of a court reporter and for transcript fees for Ms. Wimmer's deposition and the final hearing. The court also awarded Auto Credit $285.50 in court costs under Tenn. R. Civ. P. 54.01(1).

Auto Credit remains the prevailing party on its deficiency claim against Ms. Wimmer. However, since we have reversed the trial court's dismissal of her counterclaim for statutory damages, she is the prevailing party on that claim. We agree with Ms. Wimmer that discretionary costs should be apportioned among the two claims. However, instead of remanding the case to the trial court for that apportionment, we can make that apportionment based on the record before us. In the interests of economy of time and money for the parties and the trial court, we find that the discretionary costs were incurred for each claim in roughly equal proportions. Accordingly, we reduce the trial court's award of discretionary costs to Auto Credit by one-half. Court costs in the trial court shall be divided equally between the parties.

## VI.

The trial court's dismissal of Melissa Wimmer's counterclaim for statutory damages is reversed, and Ms. Wimmer is awarded statutory damages of $4,318.42, which should be offset by the deficiency judgment against her awarded to Auto Credit. The trial court's award of discretionary

costs to Auto Credit is reduced to $293.75. We remand this case to the Circuit Court of Sumner County for any further proceedings necessary. Tax the costs on appeal to the appellee, Auto Credit of Nashville.

                                                   _____

                                                  PATRICIA J. COTTRELL, JUDGE