Wayne BENTON and Lillian BENTON *v.*
GENERAL MOBILE HOMES, INC.

CA 83-462                                     678 S.W.2d 774

Court of Appeals of Arkansas
Division II
Opinion delivered November 7, 1984

*Murphy, Post, Thompson & Arnold,* for appellant.

*Highsmith, Gregg, Hart, Farris & Rutledge,* by: *Linda Boone,* for appellee.

LAWSON CLONINGER, Judge. The sole issue on this appeal is the commercial reasonableness of the sale of a repossessed mobile home. We find that the trial court erred in finding that appellee disposed of the mobile home in a commercially reasonable manner in accordance with the Uniform Commercial Code, Ark. Stat. Ann. § 85-9-504 (Supp. 1983). We reverse and remand.

Appellants entered into a conditional sales contract with appellee on May 8, 1976 for the purchase of a mobile home. Appellants agreed to pay $11,561.25 for the trailer; they later defaulted, owing appellee a balance of $4,341.85. Appellee repossessed the mobile home and on May 19, 1982 gave notice to appellants by certified letter that it would sell the property at "public auction" on June 1, 1982. On that date, at appellee's offices, appellee's manager purchased the mobile home for appellee for $2,500. Appellee sold the trailer in October 1982 to a third party for $7,032 after investing $991.95 for renovation. Appellee then filed a complaint for a deficiency judgment against appellants, and appellee was awarded a deficiency judgment in the sum of $2,608.05.

The Uniform Commercial Code provides that a secured party may, after default, dispose of repossessed collateral and apply the proceeds to the reasonable expenses of retaking and selling the property and to the satisfaction of the secured indebtedness. The secured party is accountable to the debtor for any surplus, while the debtor is liable for any deficiency. Ark. Stat. Ann. § 85-9-504 (1) and (2) (Supp. 1983). Subsection (3) further provides:

> Disposition of the collateral may be by public or private proceedings, and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms, but every aspect of the disposition including the method, manner, time, place, and terms must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reason-

able notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, if he has not signed after default a statement renouncing or modifying his right to notification of sale. In the case of consumer goods, no other notification need be sent. In other cases, notification shall be sent to any other secured party from whom the secured party has received (before sending his notification to the debtor or before the debtor's renunciation of his rights) written notice of a claim of an interest in the collateral. The secured party may buy at any public sale and if the collateral is of a type customarily sold in a recognized market or is of a type which is the subject of widely distributed standard price quotations, he may buy at private sale.

Appellants argue that appellee held a private rather than a public sale, thereby violating the Code requirements regarding proper notice and the secured parties' ability to purchase the collateral. The practical consequence of the different proceedings is indicated in § 85-9-504(3), *supra,* where limitations not present in a public sale are placed upon the secured party in a private sale; in the latter, the secured party may buy the collateral if it "is of a type customarily sold in a recognized market or is of a type which is the subject of widely distributed standard price quotations." In *Carter* v. *Ryburn Ford Sales, Inc.,* 248 Ark. 236, 451 S.W.2d 199 (1970), the Arkansas Supreme Court held that a secured party was not in compliance with the provisions of § 85-9-504(3) when it purchased a repossessed truck at its own private sale, because a used automobile is not considered "a type customarily sold on a recognized market." See also *Norton* v. *National Bank of Commerce,* 240 Ark. 143, 398 S.W.2d 538 (1966).

We are of the opinion that the disposition of a mobile home is, for the purposes of the Uniform Commercial Code, analogous to that of a car or truck, and that if the secured party is to become the purchaser a public sale is necessary to satisfy the requirements of the Code.

In this case, although appellee notified appellants that a public sale of the repossessed property would be held, there was in fact no public sale at all. The Code does not define either "public sale" or "private sale", but in *Union and Mercantile Trust Co.* v. *Harnwell*, 158 Ark. 295, 250 S.W.2d 321 (1923), the Arkansas Supreme Court adopted the definition of a public sale as one made at auction to the highest bidder. In *Harnwell*, the court went on to say:

> The parties could not have meant that, if the appellant elected to sell at public sale, no notice of the sale would have to be given to the public. Such a construction of the contract of pledge would render the same contradictory within itself, because a public sale could not be conducted unless the public were invited to participate therein. Such construction of the contract would render the same wholly meaningless.

In the instant case, the sale was held at appellee's offices with only appellee's manager, the bookkeeper, and a salesman present. No one else was notified of the sale or invited to participate in it. Appellee's manager simply announced that the mobile home would be auctioned, and he bid $2,500 and sold himself the secured property. The absence of advertisement to the public, the conduct of the sale at appellee's offices, and the presence of only appellee's employees, all strongly suggest a private sale, in spite of the label attached by appellee in its letter of notice to appellants. The purchase of the collateral by appellee at its own sale was improper, and the sale failed to meet the standard of § 85-9-504(3), *supra*.

In *Norton* v. *National Bank of Commerce, supra*, an action was brought to recover a deficiency judgment, as was done in the instant case. In *Norton*, it was held that since the creditor had failed to comply with the notice requirements of the Uniform Commercial Code, it would be presumed "the collateral was worth at least the amount of the debt, thereby shifting to the creditor the burden of proving the amount that should reasonably have been obtained through a sale conducted according to law." In *Mayhew* v. *Loveless*, 1 Ark. App. 69, 613 S.W.2d 118 (1981),

this court held that unless this proof is made, the presumption will result in the failure to obtain a deficiency judgment. In *Mayhew*, we stated:

> If this proof is made, judgment can be rendered for any deficiency that exists after the debt is credited with the amount that reasonably should have been obtained through a sale conducted according to law, *Universal C.I.T.* v. *Rone*, 248 Ark. 665, 453 S.W.2d 37 (1970).

Appellee's manager testified that in his opinion, $2500 was a fair value for the mobile home. The burden was upon appellee in this case to prove the amount that should reasonably have been obtained through a properly conducted public sale. Unless appellee makes that proof, it will be unable to obtain a deficiency judgment against appellants.

The judgment of the trial court is reversed and the cause is remanded for proceedings not inconsistent with this opinion.

CRACRAFT, C.J., and GLAZE, J., agree.