IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
SEPTEMBER 20, 2004 Session

# R & J OF TENNESSEE, INC. v. BLANKENSHIP-MELTON REAL ESTATE, INC. and WALDEN BLANKENSHIP, INDIVIDUALLY

**Direct Appeal from the Circuit Court for Henderson County**
**No. 03-002 Roy B. Morgan, Jr., Judge**

---

**No. W2004-00185-COA-R3-CV - Filed November 17, 2004**

---

This case involves a lawsuit filed by a secured party against a guarantor seeking a deficiency judgment following a foreclosure sale. The guarantor argued that the secured party was not entitled to a deficiency because he was given inadequate notice and the sale was conducted in a commercially unreasonable manner. Following a hearing, the trial court awarded the secured party a deficiency judgment. We reverse and remand to the trial court for further action consistent with this opinion.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and DAVID R. FARMER, J., joined.

Kevin Carter, Lexington, TN, for Appellant

Howard F. Douglass, Lexington, TN, for Appellee

## OPINION

## I. Factual Background and Procedural History

On February 23, 2000, Walden Blankenship ("Mr. Blankenship"), as acting president of Blankenship-Melton Real Estate, Inc. ("Blankenship-Melton"), entered into a loan transaction with the Bank of Henderson County (the "Bank"). In exchange for the Bank loaning Blankenship-Melton $40,133.00, Blankenship-Melton executed a security agreement granting the Bank a security interest in a 1999 Bryant boat, a New Holland tractor, a 1999 Ford F150 truck, and a 1994 mobile home. The agreement called for Blankenship-Melton to pay off the loan by June 18, 2000.

The collateral used to secure the loan was purchased by Blankenship-Melton prior to entering into the loan in question. According to Mr. Blakenship, Larry Melton, a director of Blankenship-Melton, purchased the truck new for an amount between $23,000 and $24,000, and the vehicle's title listed Blankenship-Melton as the owner. Mr. Blankenship purchased the tractor used as collateral, as well as a tiller, a bush hog, and a boom pole, for an amount between $17,000 and $18,000. Mr. Blankenship also stated that Blankenship-Melton paid approximately $15,000 for the double-wide mobile home when they purchased it. At the time the loan agreement was entered into in February of 2000, the Bank estimated the value of all of the collateral to be at least $40,000.

Contemporaneously with the execution of the promissory note, Mr. Blankenship executed a guaranty agreement promising to remain personally liable on the promissory note owed to the Bank. The guaranty agreement identified Mr. Blankenship's home address as "2820 Shady Hill Road, Lexington, TN, 38351." In addition, Larry Melton and his son, Steve Melton, the secretary of Blankenship-Melton, also executed personal guarantees to secure the loan. The Bank renewed the loan on two separate occasions, extending the due date for six months each time. At some point, the loan went into default.[1] During this period of time, Mr. Blankenship asserted that he communicated with the Bank and asked the Bank to foreclose on the collateral. Stan Reynolds, a representative of the Bank, did not recall Mr. Blankenship making such a request. Regardless of this dispute, Mr. Blankenship never personally paid any amounts toward the outstanding loan amount.

Johnny Melton is the majority shareholder and president of R & J of Tennessee, Inc. ("R & J" or "Appellee"). Larry Melton and Steve Melton approached Johnny Melton explaining that this particular note had come due and asked for help with some outstanding loans Blankenship-Melton owed to the Bank. On November 6, 2001, Johnny Melton, acting as agent for R & J, purchased the promissory note from the Bank for $26,455.39. At the time R & J purchased the promissory note from the Bank, Blankenship-Melton was already in default on the loan, and the Bank had already begun to institute foreclosure proceedings on the collateral. In addition, only the truck, tractor, and mobile home were left as collateral to secure the note.[2] When R & J purchased the note, Steve Melton had been living in the trailer which was used as collateral, and he never paid rent to Blankenship-Melton during his periods of occupancy. Larry Melton had possession of the Ford truck and drove it on a daily basis. The tractor remained in Larry Melton's possession and was stored at his personal residence. According to Johnny Melton, at the time R & J purchased the note, the tractor was inoperable due to mechanical problems.

In June of 2002, Johnny Melton, acting as agent for R & J, began the foreclosure process. On June 11, 2002, Johnny Melton sent a notice to Mr. Blankenship indicating that the collateral would be sold at a public sale on June 21, 2002. According to Johnny Melton, Steve Melton and Larry Melton continued to use the collateral during this period of time. R & J sent the notice of sale

---

[1] Although the record does not specify why the loan was in default, we assume that the default resulted from the non-payment of the loan indebtedness.

[2] Prior to assigning the promissory note to R & J, the Bryant boat was sold and the proceeds applied toward the outstanding debt. As a result, the Bank released the boat as collateral securing the loan.

by certified mail to Mr. Blankenship at the address listed in the promissory note. Mr. Blankenship, however, had subsequently moved and conceded that he never notified the Bank of his new home address. According to Johnny Melton, similar notices were also sent to Larry Melton and Steve Melton. Johnny Melton also posted a copy of the notice of sale at R & J's office, the courthouse, and on the collateral. The envelope containing the notice to Mr. Blankenship, which was introduced as an exhibit at trial, indicated that the postal service attempted to deliver the notice to Mr. Blankenship at his old address on June 13 and 18, 2002. Despite having not received a return receipt indicating successful delivery of the notice, R & J went ahead with the sale of the collateral on June 21, 2002. On June 28, 2002, the postal service returned the notice to R & J marked "not deliverable as addressed."

On the date of the public sale, only Johnny Melton, on behalf of R & J, and Larry Melton were present, and only Johnny Melton placed a bid on the collateral. R & J purchased the mobile home for $8,000, the Ford truck for $11,000, and the tractor for $1,000. Johnny Melton stated that he used his previous experience in the banking industry and mobile home business to assess the value of each item of the collateral at the time of the sale. On August 26, 2002, Johnny Melton, on behalf of R & J, filed a lawsuit[3] against Mr. Blankenship in the General Sessions Court of Henderson County, seeking a deficiency judgment in the amount of $13,388.40[4] pursuant to the personal guaranty. The general sessions court found in favor of Mr. Blankenship, and R & J appealed the decision to the Circuit Court of Henderson County.[5] Following a *de novo* bench trial, the circuit court entered a deficiency judgment against Mr. Blankenship in the amount of $10,847.29.

Mr. Blankenship filed a timely notice of appeal to this Court and presents the following issues for our review:

---

[3] The civil warrant filed by R & J listed the address on the promissory note as Mr. Blankenship's home address for service of process purposes.

[4] This deficiency represented the deficit left after the sale of the collateral and the outstanding interest owed on the loan amount and attorney's fees.

[5] The Tennessee Code provides:

> **Trial *de novo* on appeal — Decision on merits**.
>
> No civil case, originating in a general sessions court and carried to a higher court, shall be dismissed by such court for any informality whatever, but shall be tried on its merits; and the court shall allow all amendments in the form of action, the parties thereto, or the statement of the cause of action, necessary to reach the merits, upon such terms as may be deemed just and proper. The trial shall be *de novo*, including damages.

Tenn. Code Ann. § 16-15-729 (2003). "Cases appealed from the general sessions court to the circuit court pursuant to Tenn. Code Ann. § 16-15-729 should be treated for all purposes as if they originated in the circuit court." *B & G Constr., Inc. v. Polk*, 37 S.W.3d 462, 465 (Tenn. Ct. App. 2000).

I. Whether Appellant, Walden Blankenship, was given statutorily sufficient notice regarding the public sale of the collateral pursuant to section 47-9-611(b) of the Tennessee Code;

II. Whether Appellee, R & J of Tennessee, failed to dispose of the collateral in a commercially reasonable manner under section 47-9-610(b) of the Tennessee Code and to exercise good faith pursuant to section 47-1-203 of the Tennessee Code;

III. Whether Appellee, R & J of Tennessee, exercised reasonable care pursuant to section 47-9-207(a) of the Tennessee Code in preserving and exercising custody of the collateral used to secure the loan at issue; and

IV. Whether the trial court erred in finding that no evidence was introduced at trial regarding the condition and value of the tractor on the date of the foreclosure sale as it relates to Appellee's bid.

In addition to the issues raised by Appellant, we are also asked to review the following issue raised by Appellee:

V. Whether Appellant, Walden Blankenship, waived the objections to the foreclosure sale which he now raises on appeal according to the terms of the personal guaranty.

For the reasons contained herein, we reverse the decision of the trial court.

## II. Standard of Review

This Court will review findings of fact made by the trial court sitting without a jury "*de novo* upon the record of the trial court, accompanied by a presumption of correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d) (2003); *see also Decatur County Bank v. Smith*, No. 02A01-9903-CV-00074, 1999 Tenn. App. LEXIS 864, at *4 (Tenn. Ct. App. Dec. 27, 1999). We review the lower court's conclusions of law *de novo* without any presumption of correctness. *Dennis Joslin Co. v. Johnson*, 138 S.W.3d 197, 200 (Tenn. Ct. App. 2003) (citing *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993)).

## III. Waiver of Objections

R & J asserts on appeal that Mr. Blankenship has waived his right to contest the sufficiency of the foreclosure sale and notice based upon the terms of the personal guaranty. The applicable provision of Tennessee's version of the Uniform Commercial Code provides:

> **Waiver. —**
>
> (a) WAIVER OF DISPOSITION NOTIFICATION. A debtor or secondary obligor may waive the right to notification of disposition of collateral under § 47-9-611 only by an agreement to that effect entered into and authenticated *after default*.

Tenn. Code Ann. § 47-9-624(a) (2003) (emphasis added). Accordingly, we find this issue to be without merit. *See Tropical Jewelers, Inc. v. Nationsbank, N.A.*, 781 So.2d 392, 396 (Fla. Dist. Ct. App. 2000).

## IV. Notice of Sale

The loan transaction at issue in this case is governed by Tennessee's version of Article 9 of the Uniform Commercial Code, codified at section 47-9-101 *et seq*. of the Tennessee Code. *See Nationsbank v. Clegg*, No. 01-A-01-9510-CH-00469, 1996 Tenn. App. LEXIS 214, at *3 (Tenn. Ct. App. Apr. 10, 1996). The question of whether the notice given by R & J in this instance was sufficient is a question for the trier of fact, and R & J bears the burden of proof on this issue. *Id*. at *13; *see also* Tenn. Code Ann. § 47-9-626(2) (2003). The trial court found, and the parties do not dispute, that Mr. Blankenship never received actual notice of the sale. After reviewing the Appellant's Brief, we have come to the conclusion that Mr. Blankenship is arguing, in essence, that section 47-9-611(b) of the Tennessee Code requires that a person in Mr. Blankenship's position must receive actual notice of the disposition of the collateral prior to a public sale in order for the notice to be adequate under Tennessee's version of Revised Article 9 of the Uniform Commercial Code.

In support of this argument, Mr. Blankenship points to the mandatory language "shall" in the applicable statute which provides:

> NOTIFICATION OF DISPOSITION REQUIRED. Except as otherwise provided in subsection (d),[6] a secured party that disposes of collateral under § 47-9-610 shall send to the persons specified in subsection (c) a reasonable authenticated notification of disposition.

Tenn. Code Ann. § 47-9-611(b) (2003). Section 47-9-611(c), setting forth the persons to be notified before a secured party disposes of the collateral, provides that, in order "[t]o comply with subsection (b), the secured party shall send an authenticated notification of disposition to . . . any secondary obligor."[7] Tenn. Code Ann. § 47-9-611(c)(2) (2003). Alternatively, R & J asserts that it sent the

---

[6] "Subsection (b) does not apply if the collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market." Tenn. Code Ann. § 47-9-611(d) (2003). Neither is at issue in the present case.

[7] A "secondary obligor" is defined as "an obligor to the extent that: (A) the obligor's obligation is secondary; or (B) the obligor has a right of recourse with respect to an obligation secured by collateral against the debtor, another obligor, or property of either." Tenn. Code Ann. § 47-9-102(71) (2003). The official comment to the definition section to Article 9 of the Code provides, in relevant part, as follows:

> Determining whether a person was a "debtor" under former section 9-105(1)(d) required a close examination of the context in which the term was used. To reduce the need for this examination, this article redefines "debtor" and adds new defined terms, "secondary obligor" and "obligor." In the context of part 6 (default and enforcement), these definitions distinguish among three classes of persons: (i)

(continued...)

notice to Mr. Blankenship at the address he listed on the personal guaranty, and, therefore, he should bear the responsibility for not receiving the notice since he failed to notify the Bank of his change in address.

The trial court held that the notice provided to Mr. Blankenship in this case was sufficient. In support of his position that the notice in this instance was inadequate, Mr. Blankenship directs our attention to two facts. First, he points to the fact that R & J proceeded with the sale despite having not received any indication that the notice had been delivered to Mr. Blankenship. Second, Mr. Blankenship asserts that Johnny Melton had actual knowledge of Mr. Blankenship's correct home address and failed to send the notice to that address. Mr. Blankenship points to a copy of a complaint[8] filed in federal court on June 21, 2002, the day of the public sale. The complaint, attached to Mr. Blankenship's Amended Motion to Alter or Amend Judgment or for a New Trial submitted to the circuit court below, named Mr. Blankenship as a defendant and correctly listed his current address as 341 Box Road, Darden, Tennessee, 38328. After conducting a hearing, the trial court issued an order denying Mr. Blankenship's motion.

The decision as to whether to grant a motion for new trial or to alter or amend a final judgment based on newly discovered evidence is entirely within the discretion of the trial judge. *Collins v. Greene County Bank*, 916 S.W.2d 941, 945 (Tenn. Ct. App. 1996) (citing *Seay v. City of Knoxville*, 654 S.W.2d 397, 400–01 (Tenn. Ct. App. 1983)). We review a trial court's decision in this regard under an abuse of discretion standard. *Chambliss v. Stohler*, 124 S.W.3d 116, 120 (Tenn. Ct. App. 2003) (citing *Bradley v. McLeod*, 984 S.W.2d 929, 933 (Tenn. Ct. App. 1998)). In applying this standard this Court has stated:

---

[7](...continued)

> Those persons who may have a stake in the proper enforcement of a security interest by virtue of their nonlien property interest (typically, an ownership interest) in the collateral; (ii) those persons who may have a stake in the proper enforcement of the security interest because of their obligation to pay the secured debt; and (iii) those persons who have an obligation to pay the secured debt but have no stake in the proper enforcement of the security interest. Persons in the first class are debtors. Persons in the second class are secondary obligors if any portion of the obligation is secondary or if the obligor has a right of recourse against the debtor or another obligor with respect to an obligation secured by collateral. One must consult the law of suretyship to determine whether an obligation is secondary.

Tenn. Code Ann. § 47-9-102 cmt. 2 (2003). In the instant case, Mr. Blankenship qualifies as a secondary obligor. *See Hardy v. Miller*, No. M1998-00940-COA-R3-CV, 2001 Tenn. App. LEXIS 898, at *5–6 (Tenn. Ct. App. Dec. 10, 2001); Robert M. Lloyd, *The New Article 9: Its Impact on Tennessee Law (Part II)*, 67 Tenn. L. Rev. 329, 353 (2000) (discussing the manner in which Revised Article 9 eliminates the controversy over whether notice of sale must be sent to a guarantor).

[8] In the complaint Larry Melton, Steve Melton, and R & J allege that several defendants, including Mr. Blankenship, engaged in deceptive lending practices in violation of the federal Racketeer Influenced Corrupt Organization Act and Truth in Lending Act, as well as various state causes of action.

> It is clear that a finding of an abuse of discretion cannot be based simply upon an appellate court's determination that it would have decided the question differently. *Whiton v. Whiton*, No. E2000-00467-COA-R3-CV, 2002 Tenn. App. LEXIS 512[,] at *21 (Tenn. Ct. App. July 18, 2002). Rather, this standard requires that we determine "whether the lower court's exercise of its discretion went beyond the bounds of a fair exercise of discretion." *Id*.

*Davis v. Estate of Johnnie Rex Flynn*, No. E2001-02480-COA-R3-CV, 2002 Tenn. App. LEXIS 702, at *23 (Tenn. Ct. App. Sept. 30, 2002). The federal complaint was filed on June 21, 2002, and the trial in this matter occurred on July 28, 2003. We presume that Mr. Blankenship received service of the federal complaint prior to the trial of this matter in the court below. "The moving party must demonstrate that the new evidence was not known prior to or during the trial and that it could not have been ascertained by the exercise of reasonable diligence." *Collins*, 916 S.W.2d at 945; *see also Seay*, 654 S.W.2d at 399. Accordingly, we find that the trial court did not abuse its discretion in denying Mr. Blankenship's motion partially based on the information contained in the federal complaint. In turn, we are constrained to reviewing only the evidence presented at trial when determining whether the notice sent to Mr. Blankenship was sufficient under section 47-9-611(b) of the Tennessee Code.

The official comment to section 47-9-611(b) provides that "[t]he notification must be reasonable as to the manner in which it is sent, its timeliness (i.e., a reasonable time before the disposition is to take place), and its content." Tenn. Code Ann. § 47-9-611 cmt. 2 (2003). Mr. Blankenship does not contest that R & J failed to send the notice in a timely fashion. *See* Tenn. Code Ann. § 47-9-612. Rather, he contests whether the notice was sent in a reasonable manner when it was addressed to an address where he no longer lived. In addition to the timing of the notice, the reasonableness of the notice also encompasses a consideration of where the notice was sent. *Commercial Credit Corp. v. Cutshall*, 28 U.C.C. Rep. Serv. (Callaghan) 277 (Tenn. Ct. App. 1979).

Section 47-9-611 of the Tennessee Code "leaves to judicial resolution, based upon the facts of each case, the question whether the requirement of 'reasonable notification' requires a 'second try,' i.e., whether a secured party who sends notification and learns that the debtor did not receive it must attempt to locate the debtor and send another notification." Tenn. Code Ann. § 47-9-612 cmt. 6 (2003). We begin by examining the definitions of the key terms contained in section 47-9-611(b) of the Tennessee Code. The term "send" is defined as follows:

> "Send", in connection with a record or notification, means:
> (A) to deposit in the mail, deliver for transmission, or transmit by any other usual means of communication, with postage or cost of transmission provided for, addressed to any address reasonable under the circumstances; or

> (B) to cause the record or notification to be received within the time that it would have been received if properly sent under subparagraph (A).

Tenn. Code Ann. § 47-9-102(74) (2003). The definition section applicable to Tennessee's version of Article 9 does not define "notice," but we find guidance in the general definition section of the Code, which provides:

> A person "notifies" or "gives" a notice or notification to another by taking such steps as may be reasonably required to inform the other in ordinary course *whether or not such other actually comes to know of it*. A person "receives" a notice or notification when:
> (A) It comes to his attention; or
> (B) It is duly delivered at the place of business *through which the contract was made or at any other place held out by him* as the place for receipt of such communications[.]

Tenn. Code Ann. § 47-1-201(26) (2003) (emphasis added).

The policy justifications for providing notice to a debtor are equally applicable to a secondary obligor, and can be stated as follows:

> We think the provision for notice in connection with a sale is intended to afford the debtor a reasonable opportunity (1) to avoid a sale altogether by discharging the debt and redeeming the collateral or (2) in case of sale, to see that the collateral brings a fair price. A notice that does not afford him this reasonable opportunity is not reasonable notification and a sale under it is not commercially reasonable.

*Int'l Harvester Credit Corp. v. Ingram*, 619 S.W.2d 134, 137 (Tenn. Ct. App. 1981) (citing *Mallicoat v. Volunteer Fin. & Loan Corp.*, 415 S.W.2d 347, 350 (Tenn. Ct. App. 1966)).

In support of his argument that the notice given was not reasonable, Mr. Blankenship relies on our decision in *Mallicoat v. Volunteer Finance & Loan Corp.*, 415 S.W.2d 347 (Tenn. Ct. App. 1966). In *Mallicoat*, the secured party sent a notice of sale to the debtor by certified mail, but the notice was returned to the secured party undelivered. *Mallicoat*, 415 S.W.2d at 349. After receiving the returned notice, the secured party continued to conduct a sale of the collateral and sued the debtor for a deficiency judgment. *Id*. In finding the notice in that case insufficient under the predecessor statute to section 47-9-611, we stated:

> In view of the undisputed proof in this case that the debtor did not receive the notice and that the secured creditor was aware that he

> had not received it, it is our opinion the creditor not only failed to show a compliance with the Act but that the record affirmatively shows a lack of compliance and a conscious disregard of the debtor's right to notice. The property was not perishable. The debtor lived in Knoxville where the creditor had its place of business and sold the property. In addition, the creditor had information as to where the debtor was employed and where his parents lived. Yet, the sale was allowed to proceed without any further effort to comply with the notice requirement.

*Id*. at 350; *see also First Tenn. Bank Nat'l Ass'n v. Helton*, No. 03A01-9501-CV-00026, 1995 Tenn. App. LEXIS 339, at *5–6 (Tenn. Ct. App. May 23, 1995).

Courts throughout the country vary as to whether the secured party has the burden of proving that the debtor or a secondary obligor received actual notice of a pending sale. *See* Richard C. Tinney, Annotation, *Sufficiency of Secured Party's Notification of Sale or Other Intended Disposition of Collateral Under UCC § 9-504(3)*, 11 A.L.R. 4th 241, §§ 14–16 (2003). Many of our sister states interpret the notice provision to require only that the creditor send notice. *See Underwood v. First Ala. Bank of Huntsville*, 453 So.2d 742, 745 (Ala. Civ. App. 1983); *Hall v. Owen County State Bank*, 370 N.E.2d 918, 925 (Ind. Ct. App. 1977); *McKee v. Miss. Bank & Trust Co.*, 366 So.2d 234, 238 (Miss. 1979); *Commerce Bank of St. Louis v. Dooling*, 875 S.W.2d 943, 946 (Mo. Ct. App. 1994); *First Nat'l Bank & Trust Co. of Lincoln v. Hermann*, 286 N.W.2d 750, 752 (Neb. 1980). Our decision in *Mallicoat*, however, demonstrates that Tennessee requires more than a mere "sending" in order for a secured party to be in compliance with the statute. James J. White & Robert S. Summers, *Uniform Commercial Code* § 26-10, at 987 (1972).

At the other end of the notice spectrum, we have held that the notice requirement is satisfied when the following occurs:

> The sending of notice, certified, return receipt requested, is commercially reasonable. When a plaintiff forwards notice to the debtor's proper address, certified, return receipt requested, and the notice is received at that address and returned signed by someone at the address, it is reasonable for plaintiff to assume that the defendant received the notice.

*Caterpillar Fin. Services Corp. v. Woods*, No. 89-326-II, 1990 Tenn. App. LEXIS 117, at *7–8 (Tenn. Ct. App. Feb. 22, 1990). Our case law makes clear that "the creditor will not be forced to take responsibility for lost mail or the debtor's refusal to accept properly delivered mail." *Nationsbank v. Clegg*, No. 01-A-01-9510-CH-00469, 1996 Tenn. App. LEXIS 214, at *14 (Tenn. Ct. App. Apr. 10, 1996). Yet, we have also made clear that:

> While absolute proof of receipt of notice may not be required in every instance, a creditor, who only makes one attempt to contact the debtor, and is left uncertain of receipt of the notice, has not fulfilled its obligation to the debtor when it proceeds with a disposition less than two weeks from mailing its first notice.

*Id*. at *15–16.

We disagree with Mr. Blankenship's assertion that section 47-9-611(b) requires the secured party to prove that the secondary obligor actually received the notice. *See Commercial Credit Corp. v. Cutshall*, 28 U.C.C. Rep. Serv. (Callaghan) 277 (Tenn. Ct. App. 1979). Based on the facts presented to the trial court below, however, we find the trial court's holding that notice in this case was sufficient under the statute to be erroneous as a matter of law. We are mindful that Mr. Blankenship bears some responsibility for not receiving notice in this case. *See The Cent. Trust Co. of Northeastern Ohio v. Snair*, No. CA-5818, 1982 Ohio App. LEXIS 15214, at *2–3 (Ohio Ct. App. June 23, 1982); *Gen. Motors Acceptance Corp. v. Horn*, No. 5861, 1978 Ohio App. LEXIS 11155, at *5 (Ohio Ct. App. July 20, 1978). However, R & J sent the notice to Mr. Blankenship on June 11, 2002, and conducted a sale ten days later on June 21, 2002, without receiving any indication as to whether the notice actually reached Mr. Blankenship. We find, therefore, that this amounts to unreasonable notice under the statute and reverse the trial court's holding on this issue. *See Nationsbank v. Clegg*, No. 01-A-01-9510-CH-00469, 1996 Tenn. App. LEXIS 214, at *15–16 (Tenn. Ct. App. Apr. 10, 1996)

## V. Commercial Reasonableness of the Sale of the Collateral

Lack of reasonable notice to a secondary obligor is one factor bearing upon whether the sale of the collateral was commercially reasonable. *See Mallicoat v. Volunteer Fin. & Loan Corp.*, 415 S.W.2d 347, 351 (Tenn. Ct. App. 1966); *Gen. Motors Acceptance Corp. v. Middleton*, No. 02A01-9103-CH-00033, 1991 Tenn. App. LEXIS 820, at *7 (Tenn. Ct. App. Oct. 16, 1991). "However, notice by itself is not conclusive on the question of whether a sale was commercially reasonable." *Decatur County Bank v. Smith*, No. 02A01-9903-CV-00074, 1999 Tenn. App. LEXIS 864, at *9 (Tenn. Ct. App. Dec. 27, 1999). We note that the remaining issues presented by Appellant for our review focus upon whether Appellee conducted the sale of the collateral in a commercially reasonable manner. Accordingly, we will discuss these issues collectively in this section of the opinion.

"After default, a secured party may sell, lease, license, or otherwise dispose of any or all of the collateral in its present condition or following any commercially reasonable preparation or processing." Tenn. Code Ann. § 47-9-610(a) (2003). As a secured party conducting a public sale, R & J also had the right to purchase the collateral at the sale. Tenn. Code Ann. § 47-9-610(c)(1) (2003). In carrying out the sale of the collateral R & J was bound by two standards. "First, in exercising his rights upon default the secured party is bound by the good faith requirement applicable throughout the Uniform Commercial Code." *Decatur County Bank*,1999 Tenn. App. LEXIS 864,

at *6 (citing Tenn. Code Ann. § 47-1-203). The second requirement that R & J was bound to follow addresses the procedures used in selling the collateral and provides:

> COMMERCIALLY REASONABLE DISPOSITION. Every aspect of a disposition of collateral, including the method, manner, time, place, and other terms, must be commercially reasonable. If commercially reasonable, a secured party may dispose of the collateral by public or private proceedings, by one (1) or more contracts, as a unit or in parcels, and at any time and place and on any terms.

Tenn. Code Ann. § 47-9-610(b) (2003); *see also Am. City Bank of Tullahoma v. W. Auto Supply Co.*, 631 S.W.2d 410, 419 (Tenn. Ct. App. 1981). This Court has defined "commercially reasonable" as follows:

> The requirement that the property be disposed of in a "commercially reasonable" manner seems to us to signify that the disposition shall be made in keeping with prevailing trade practices among reputable and responsible business and commercial enterprises engaged in the same or a similar business.

*Mallicoat v. Volunteer Fin. & Loan Corp.*, 415 S.W.2d 347, 350 (Tenn. Ct. App. 1966); *see also* Tenn. Code Ann. § 47-9-627(b) (2003). The trial court found that R & J conducted the sale in good faith and in a commercially reasonable manner. We disagree.

Like notice, review of a sale of collateral to determine whether it was conducted in good faith and in a commercially reasonable manner is an inquiry dependent upon the facts of each case. In reviewing the facts of this case, we are cognizant of the following:

> Rather than viewing in isolation specific details of the sale of the debtor's collateral, it is the aggregate of circumstances in each case which should be emphasized in reviewing the sale. The elements of manner, method, time, place and terms cited by the Uniform Commercial Code are to be viewed as necessary and interrelated parts of the whole transaction.

*In re Four Star Music Co., Inc.*, 2 B.R. 454, 463 (Bankr. M.D. Tenn. 1979) (citations omitted). This court has often looked to the following factors when attempting to ascertain whether a foreclosure sale was conducted in a commercially reasonable manner:

> Although the statute has not attempted to define the parameters of the term "commercially reasonable", case law has specified six factors by which the statute requirements may be measured:

(1) the type of collateral involved; and
(2) the condition of the collateral; and
(3) the number of bids solicited; and
(4) the time and place of sale; and
(5) the purchase price received or the terms of the sale; and
(6) any special circumstances involved.

*Decatur County Bank v. Smith*, No. 02A01-9903-CV-00074, 1999 Tenn. App. LEXIS 864, at *7–8 (Tenn. Ct. App. Dec. 27, 1999) (quoting *In re Four Star Music Co., Inc.*, 2 B.R. 454, 461 (Bankr. M.D. Tenn. 1979)). "The burden of proving that a sale of collateral is commercially reasonable under these statutes is on the secured party seeking the deficiency judgment." *Decatur County Bank*, 1999 Tenn. App. LEXIS 864, at *7.

Mr. Blankenship argues that the timing of the sale demonstrates it was conducted in a commercially unreasonable manner. In support of his position, he points to the fact that R & J delayed in conducting a sale of the collateral for seven and one-half months after purchasing the note. Mr. Blankenship notes that at the time R & J purchased the note it had already been in default for some time.

The official comment to section 47-9-610 of the Tennessee Code provides:

> Time of Disposition. This article does not specify a period within which a secured party must dispose of collateral. This is consistent with this article's policy to encourage private dispositions through regular commercial channels. It may, for example, be prudent not to dispose of goods when the market has collapsed. Or, it might be more appropriate to sell a large inventory in parcels over a period of time instead of in bulk. Of course, under subsection (b) every aspect of a disposition of collateral must be commercially reasonable. This requirement explicitly includes the "method, manner, time, place, and other terms." *For example, if a secured party does not proceed under section 9-620 [§ 47-9-620] and holds collateral for a long period of time without disposing of it, and if there is no good reason for not making a prompt disposition, the secured party may be determined not to have acted in a "commercially reasonable" manner*. *See also* section 1-203 [§ 47-1-203] (general obligation of good faith).

Tenn. Code Ann. § 47-9-610 cmt. 3 (2003) (emphasis added). Mr. Blankenship directs our attention to this Court's holding in *Nationsbank v. Clegg*, No. 01-A-01-9510-CH-00469, 1996 Tenn. App. LEXIS 214 (Tenn. Ct. App. Apr. 10, 1996), where we stated:

> Of concern to this Court is the fact that the secured parties in this instance permitted an automobile to sit idly for over 13 months after default. The UCC does not state particular time limits for a

> secured party to take possession of the collateral, or to proceed with a sale following the taking of possession. The determination of whether delay is commercially unreasonable requires consideration of all surrounding circumstances, including market conditions, the possible physical deterioration of the collateral, its economic deterioration through obsolescence, and the time required to assemble the collateral and prepare it for sale.
>
> . . . .
>
> We have found no evidence in the record, or other authority which indicates that the 13 month delay in selling the automobile, a depreciating asset, is "in keeping with the prevailing trade practices among reputable firms engaged in similar business activities," in Tennessee. Thus, the delay appears unreasonable to this Court. . . .
>
> In exercising its rights upon default, Nationsbank is bound by the good faith requirement applicable throughout the Uniform Commercial Code. Tenn Code Ann. § 47-1-203. *American City Bank of Tullahoma v. Western Auto Supply*, 631 S.W.2d 410, 420 (Tenn. App. 1981). The obligation of good faith required the secured parties in this instance to have sold the car with greater haste.

*Nationsbank*, 1996 Tenn. App. LEXIS 214, at *8–10 (citations omitted).

In response, R & J contends that, unlike the facts in *Nationsbank*, the collateral in this case did not sit unused during the period leading up to the sale. To the contrary, Larry Melton continued to drive the truck, and Steve Melton continued to live in the mobile home. Only the tractor remained unused since it was inoperable at the time of the foreclosure sale.

"The policy of the Uniform Commercial Code, as to the disposition of collateral, is to balance and protect the rights of both debtor and creditor, while maximizing the recovery from the disposition of the collateral for the benefit of all parties." *Nationsbank*, 1996 Tenn. App. LEXIS 214, at *8 (citations omitted). Upon reviewing the entire record, we find that the evidence clearly preponderates against the trial court's finding that the sale of the collateral conducted by R & J in this case was commercially reasonable. Once a debtor or secondary obligor raises the issue of the commercial reasonableness of a sale, the secured party, in this case R & J, bears the burden of proving that the sale was carried out in a commercially reasonable manner. *Decatur County Bank v. Smith*, No. 02A01-9903-CV-00074, 1999 Tenn. App. LEXIS 864, at *7 (Tenn. Ct. App. Dec. 27, 1999). R & J failed to carry this burden at trial.

In addition to the failure to provide adequate notice, R & J failed to offer a reasonable explanation as to why it waited in excess of seven months to conduct a sale of the collateral, during which time Larry Melton and Steve Melton were allowed to continue using the collateral. *See Nationsbank*, 1996 Tenn. App. LEXIS 214, at *8–10. Contrary to R & J's position, we note that use of the items of collateral in this case would cause them to depreciate more rapidly, not less. Mr.

Blankenship also raises a related issue regarding R & J's handling of the collateral after it purchased the note in question. Mr. Blankenship asserts that, by allowing Steve Melton and Larry Melton to continue to use the collateral over the seven and one-half months before the sale, R & J increased the amount of the deficiency. According to Mr. Blankenship, in addition to constituting bad faith on the part of R & J, this amounts to a violation of section 49-9-207(a) which provides, in relevant part, as follows:

> **Rights and duties of secured party having possession or control of collateral. —**
>
> (a) DUTY OF CARE WHEN SECURED PARTY IN POSSESSION. Except as otherwise provided in subsection (d), a secured party shall use reasonable care in the custody and preservation of collateral in the secured party's possession.

Tenn. Code Ann. § 47-9-207(a) (2003). We agree with Mr. Blankenship that the actions by R & J relating to the use and custody of the collateral constitute an additional factor demonstrating that the disposition of the collateral in this case was commercially unreasonable. *See Farmers & Merchants Bank v. Barnes*, 705 S.W.2d 450, 453 (Ark. Ct. App. 1986) (holding a sale of collateral commercially unreasonable where the collateral remained in the custody of the original owner who was permitted to continue using it for six months prior to the sale); *The Bank Josephine v. Conn*, 599 S.W.2d 773, 775 (Ky. Ct. App. 1980) (finding a sale of collateral commercially unreasonable where the secured party did not dispose of the collateral for four to five weeks after repossessing it, thereby allowing it to deteriorate further prior to the sale).

We also agree with Mr. Blankenship that R & J's actions in allowing Larry Melton and Steve Melton to continue to use the collateral prior to the sale constituted bad faith. Johnny Melton's own testimony, indicating that Larry Melton and Steve Melton also continued to retain possession of the collateral after the sale, supports this conclusion:

> Q. Who keeps the vehicle for you, Mr. Melton?
> A. Larry Melton still takes care of it.
> Q. Yes. The tractor, where is the tractor at?
> A. It's still at their place.
> Q. At the Melton place?
> A. At the Melton place.
> . . . .
> Q. Where is the mobile home at currently?
> A. It's still on the property where it was.
> . . . .
> Q. Is Mr. Larry Melton living in that mobile home?
> A. Not that I'm aware of.
> Q. Who is living in it?

A. Steve is living in it.
Q. Okay. Steve Melton?
A. Uh-huh.

Providing notice of a public sale to the general public corresponds with additional factors related to the procedures employed by the secured party in conducting the sale. When a secured party undertakes to dispose of the collateral by public sale, advertising of some sort should be conducted in order to increase competitive bidding and maximize proceeds. *Gezon Motors v. Gould*, 18 U.C.C. Rep. Serv. (Callaghan) 1339 (Mich. Dist. 1976). Although R & J posted a notice of sale at the courthouse and on the collateral, the record also indicates that R & J never advertised the sale in a public newspaper or utilized an experienced auctioneer. *See First Tenn. Bank Nat'l Assoc. v. Helton*, No. 03A01-9501-CV-00026, 1995 Tenn. App. LEXIS 339, at *7–8 (Tenn. Ct. App. May 23, 1995); *see also U.S. v. Warwick*, 695 F.2d 1063, 1073 (7th Cir. 1982); *Benton v. Gen. Mobile Homes, Inc*., 678 S.W.2d 774, 776 (Ark. Ct. App. 1984). Given the nature of the collateral, this is another factor indicating the sale was not conducted by R & J in a commercially reasonable manner. *Leasing Serv. Corp. v. Broetje*, 640 F.Supp. 51, 53 (E.D. Wash. 1986) (finding a public sale commercially reasonable, despite the fact that the secured party was the only bidder present, where the secured party properly notified the debtor and advertised the sale in newspapers in the area of the sale); *Kobuk Eng'g & Contracting Services Inc. v. Superior Tank & Constr. Co-Alaska, Inc.*, 568 P.2d 1007, 1011 (Alaska 1977) (holding that a sale was not commercially reasonable where the secured party merely gave a copy of the notice to the court clerk for posting on a bulletin board and did not advertise in the newspaper in the area where the collateral was to be sold); *The Bank Josephine v. Conn*, 599 S.W.2d 773, 775 (Ky. Ct. App. 1980) (stating that a sale was commercially unreasonable where the secured party failed to prove where he posted notices, did not advertise in any newspapers, and was the only bidder at the sale).

In addition to being the only bidder at the sale, R & J also valued the collateral instead of seeking an independent appraisal. Johnny Melton did testify that he had prior experience in the banking and mobile home industries which he used to value the collateral. We note that an independent appraisal may not be required in every case. When coupled with the other facts present in this case, however, R & J's failure to do so in this instance is an additional factor indicating that this sale was not conducted in a commercially reasonable manner. *See In re Cummings*, 147 B.R. 738, 746 (D.S.D. 1992) (holding that a secured party failed to conduct a sale in a commercially reasonable manner where he did not obtain an appraisal, exerted minimal effort to notify potential buyers, and failed to give notice to the debtor); *In re Thomas*, 12 U.C.C. Rep. Serv. (Callaghan) 578 (W.D. Va. 1973) (stating that the fact that the secured party failed to obtain an independent valuation of the collateral by a third party was a factor supporting the commercial unreasonableness of the sale); *Kobuk Eng'g & Contracting Services, Inc. v. Superior Tank & Constr. Co-Alaska, Inc.*, 568 P.2d 1007, 1011 (Alaska 1977) (expressing the opinion that, had the secured party conducted an independent appraisal of the collateral, a finding of commercial reasonableness would be more likely); *Jefferson Bank & Trust Co. v. Horst*, 599 S.W.2d 201, 203 (Mo. Ct. App. 1980) (finding a

public sale of a mobile home commercially reasonable where the secured party obtained an independent appraisal).

The aggregate of circumstances in this case demonstrates that the sale of the collateral conducted by R & J was not conducted in good faith or in a commercially reasonable manner as required by Article 9 of Tennessee's Uniform Commercial Code.

## VI. Effect of Failure to Conduct a Commercially Reasonable Sale and Provide Sufficient Notice

Because R & J failed to provide Mr. Blankenship with adequate notice under section 49-9-611, Mr. Blankenship may be entitled to certain statutory damages. Tenn. Code Ann. § 47-9-625 (2003). We remand this case to the trial court and instruct the court to determine what damages, if any, Mr. Blankenship is entitled to pursuant to section 47-9-625 of the Tennessee Code due to R & J's failure to provide adequate notice. *See Mallicoat v. Volunteer Finance & Loan Corp.*, 415 S.W.2d 347, 351–52 (Tenn. Ct. App. 1966); *see also Gen. Motors Acceptance Corp. v. Middleton*, No. 02A01-9103-CH-00033, 1991 Tenn. App. LEXIS 820, at *11–12 (Tenn. Ct. App. Oct. 16, 1991).

On remand, the trial court must also conduct an additional inquiry. Tennessee follows the "rebuttable presumption rule" which governs a creditor's failure to comply with Tennessee's version of the Uniform Commercial Code.

> Under Tennessee law, in the event the creditors foreclose upon security interest in collateral and conduct a commercially unreasonable sale, there is a presumption that the debtor is damaged to the extent of the deficiency claimed. The fact of an unreasonable sale does not result in the extinguishment of any deficiency whatsoever. *Federal Deposit Insurance Corp. v. Morgan*, 727 S.W.2d 500 (Tenn. Ct. App. 1986). This presumption shifts the burden of proving to the creditor the amount that should reasonably have been obtained through sale conducted according to the law. *ITT Industrial Co. v. Rector*, [34 U.C.C. Rep. Serv. (Callaghan) 379 (Tenn. Ct. App. 1982)]. The presumption is a presumption of law, and is a burden shifting device, requiring the party who is in a better position, to go forward with the evidence. Where evidence is presented sufficient to rebut the presumption, creditors are entitled to recover the deficiency. *Id.*

*Decatur County Bank v. Smith*, No. 02A01-9903-CV-00074, 1999 Tenn. App. LEXIS 864, at *9–10 (Tenn. Ct. App. Dec. 27, 1999). "It is the burden of the secured party to rebut this presumption and failure to rebut the presumption with evidence of fair market value in the record results in denial of the secured party's claims for deficiency judgment." *In re Frazier*, 93 B.R. 366, 372 (Bankr. M.D.

Tenn. 1988) (citations omitted); *see also Fed. Deposit Ins. Corp. v. Morgan*, 727 S.W.2d 500, 502 (Tenn. Ct. App. 1987) (citing *United States v. Willis*, 593 F.2d 247, 260 (6th Cir. 1979)); *Empire S., Inc. v. Repp*, 756 P.2d 745, 750–51 (Wash. Ct. App. 1988).

At trial, the parties presented conflicting testimony regarding the value of the collateral on the date of the foreclosure sale.[9] In rendering a judgment below, the trial court listed the proceeds from the foreclosure sale in its tabulation of the deficiency owed R & J, but the court failed to state whether this amount constituted the fair market value of the collateral on the date of the sale. Therefore, we are unable to determine what the fair market value of the collateral was on the date of the foreclosure sale and whether R & J overcame the presumption that the amount received at the sale equaled the debt owed. *See In re Frazier*, 93 B.R. at 372. On remand, the trial court is instructed to determine whether R & J presented sufficient proof in this regard and is entitled to a deficiency judgment. *See Provident Employees Credit Union v. Austin*, 31 U.C.C. Rep. Serv. (Callaghan) 786 (Tenn. Ct. App. 1981). If the trial court determines that R & J has overcome the presumption and is entitled to a deficiency, then the trial court is instructed to determine whether the deficiency should be offset by any damages due Mr. Blankenship pursuant to section 47-9-625 of the Tennessee Code. *See Gen. Motors Acceptance Corp.*, 1991 Tenn. App. LEXIS 820, at *11–12.

## VII. Conclusion

For the foregoing reasons, we reverse the trial court's decision. We remand this case to the trial court with instructions to determine whether the Appellant is entitled to damages against Appellee consistent with this opinion. We also instruct the trial court to determine whether Appellee is entitled to a deficiency and, if so, the amount that the deficiency should be offset by Appellant's damages, if any, consistent with this opinion. Costs of this appeal are taxed against Appellee, R & J of Tennessee, Inc., for which execution may issue if necessary.

___________________________________

ALAN E. HIGHERS, JUDGE

---

[9] We recognize that we did not address Mr. Blankenship's fourth issue regarding whether the trial court properly addressed the evidence presented concerning the value of the tractor. Addressing this issue is unnecessary given our need to remand this case to the trial court for the reasons stated herein.